THIS OPINION IS A
PRECEDENT OF THE TTAB
Mailed: March 12, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

Syngenta Crop Protection, Inc.

v.

Bio-Chek, LLC

————

Opposition No. 91175091
to Application No. 78660644
filed June 29, 2005

————

James A. Zellinger, Esq. Syngenta Crop Protection, Inc., for opposer.

Edward S. Wright, Law Offices of Edward S. Wright for applicant.

————

**Before Walters, Taylor, and Mermelstein, Administrative Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

Applicant seeks registration of the mark AgMeter (in standard characters) for "pesticide detectors," in International Class 9 and "evaluation and testing of produce for pesticides," in International Class 42.[1]

Opposer Syngenta Crop Protection, Inc.[2] filed an

---

[1] Alleging a *bona fide* intent to use the mark in commerce.

[2] Opposer's papers – including its initial pleading – identify both Syngenta Crop Protection, Inc. and Syngenta Seeds, Inc. as opposers in this matter. However, the USPTO's fee records indicate that on January 12, 2007, the filing date of this opposition, a total of $600 was received as a filing fee. The fee for an opposition is $300 per class, per opposer, and the

opposition to registration, alleging priority and a likelihood of confusion with the mark in Registration No. 2880197, namely, AGROMETER ("for related goods and services"), owned and registered by "Syngenta Participations AG, a Swiss Corporation...," Notice of Opp. ¶ 2, and used under license by opposer, Notice of Opp. ¶ 3.  Trademark Act § 2(d); 15 U.S.C. § 1052(d).[3]  By its answer, applicant denied the salient allegations of the notice of opposition.

Opposer and applicant filed briefs.[4]

We dismiss.

## I.    Record

Pursuant to Trademark Rule 2.122(b), the record in this case includes the pleadings and the file of applicant's

---

opposed application includes two classes.  Thus, opposer's payment of $600 was sufficient payment for only one opposer.

We note that opposer filed its notice of opposition using ESTTA, the Board's electronic filing system.  Although ESTTA permits oppositions to be filed by multiple opposers, opposer apparently identified only one – Syngenta Crop Protection, Inc. – during the filing process.  Had both parties been properly identified, both would have appeared on the ESTTA cover sheet and opposer would have been charged a total of $1200.  Accordingly, we do not consider Syngenta Seeds, Inc. to be a party to this proceeding.  *See* Trademark Rule 2.101(d)(2).

[3] Opposer argues in its brief that "Applicant's use of the mark blurs (dilutes) the distinctive qualities of Opposers' mark." Opp. Br. at 17-18.  Inasmuch as dilution was not pleaded as a ground for relief in the notice of opposition, we will not consider it at this juncture.  *See, e.g. Micro Motion Inc. v. Danfoss A/S*, 49 USPQ2d 1628, 1629 (TTAB 1998)(unpleaded issues considered under Fed. R. Civ. P. 15(b)(2) only when adverse party is "fairly apprised that the evidence was being introduced in support of the unpleaded ... issue.").  Even if the issue were considered, however, opposer has introduced no evidence that its mark is famous, as is required under Trademark Act § 43(c).

[4] Opposer did not file a reply brief.

subject application.  In addition, the record includes the

following items:

- Opposer's Notice of Reliance filed January 7, 2008;

- Opposer's Notice of Reliance filed January 11, 2008;

- Testimony of Francis J. Marier and Eileen Watson, filed under notice of reliance on January 31, 2008;

- Opposer's Notice of Reliance filed March 17, 2008.

With its trial brief, applicant filed numerous

objections to opposer's evidence.  It is noted that opposer

did not respond to any of applicant's evidentiary

objections.  We consider applicant's objections in turn:[5]

**A.    Timeliness of January 31 and March 17 Filings**

As applicant correctly points out, according to the

Board's revised trial schedule, issued September 28, 2007,

opposer's thirty-day testimony period concluded on January

13, 2008.  Applicant contends that materials submitted under

opposer's notices of reliance filed January 31 and March 17

were untimely.

While applicant is partially correct, it errs in the

apparent assumption that testimony in a Board proceeding

must be submitted under a notice of reliance.  In fact, it

is not appropriate to submit testimony under a notice of

reliance, *Sports Auth. Mich. Inc. v. PC Auth. Inc.*, 63

---

[5] Some of the exhibits to opposer's notices of reliance are duplicative.  Each piece of evidence will only be discussed once.

USPQ2d 1782, 1786, n.4 (TTAB 2001), although doing so is harmless error. The distinction is important, however. A notice of reliance must be submitted during the testimony period of the offering party. *See* Trademark Rules 2.120(j)(3)(i); 2.122(d)(2); 2.122(e). Testimony, on the other hand, must be taken during the offering party's testimony period, but need not be submitted during the party's testimony period – and frequently is not – because it can take several days to several weeks to prepare and sign the transcripts. As a result, transcripts are frequently not available for filing and service until after the close of the offering party's testimony period. Instead, the Trademark Rules require that the transcript be filed and served "within thirty days after completion of the taking of that testimony." Trademark Rule 2.125(a). But in the event that the party taking testimony does not meet this deadline, the other party's remedy is not to strike the testimony, but rather to file a motion "to reset such adverse party's testimony and/or briefing periods, as may be appropriate," or for an order compelling service of the transcript. *Id.* Striking the testimony is only appropriate if the party which took testimony fails to comply with a Board order to serve the other party. *Id.* While the Board did grant applicant's motion to compel service of the transcript of opposer's testimony and to reset the trial

4

schedule, *see* Order, April 28, 2008, applicant does not contend that opposer failed to comply with that order. Accordingly, the Marier and Watson testimonial depositions are not untimely.

Applicant raises an additional objection to opposer's testimony. Neither of the transcripts are signed by the witness, and only one (the testimony of Francis Marier) is signed by the official who administered the oath. As applicant notes, the parties did not waive the requirement for signature of either transcript. While both signatures are required, Trademark Rules 2.123(e)(5) and 2.123(f)(2), we find that applicant waived this objection by its failure to timely raise its objection. As a general matter, objections which can be cured must be raised when the testimony or other evidence is offered. *Genesco Inc. v. Martz*, 66 USPQ2d 1260, 1264 (TTAB 2003)("If a party objects on procedural grounds to testimony or a notice of reliance ..., the objecting party should promptly file a motion to strike the testimony or notice of reliance; and failure to do so will generally result in a waiver of the procedural objection."). Moreover, while failure to sign a testimonial deposition transcript is a valid ground for objection, it is not a fatal defect, and can be cured by the filing of a properly-signed transcript. Had applicant timely raised its objection when the transcript was filed and served, opposer

5

could have filed properly executed copies of the testimony. *Tampa Rico Inc. v. Puros Indios Cigars Inc*., 56 USPQ2d 1382, 1383 (TTAB 2000).  By waiting until after trial, applicant waived its right to object to the unsigned testimony.

We sustain opposer's objection and strike the notices of reliance filed January 31 and March 17, 2008, as untimely, with the exception of the testimony of Frances J. Marier and Eileen Watson, which is admitted.

### B.    Exhibits to Opposer's Brief

Opposer submitted over four hundred pages of exhibits with its brief.  As the Board recently remarked,

> [t]he Board sets trial periods during which the parties may submit evidence by filing notices of reliance or by taking testimony.  Evidence submitted outside of the trial periods — including that attached to briefs – is untimely, and will not be considered.  *See* TRADEMARK BOARD MANUAL OF PROCEDURE ("TBMP") § 704.05(b) (2d ed. rev. 2004) (and cases cited therein).  Conversely, evidence which was timely filed during the parties' trial periods need not and should not be resubmitted. *See ITC Entm't Group Ltd. v. Nintendo of Am. Inc*., 45 USPQ2d 2021 (TTAB 1998).  Thus, while exhibits to briefs are not explicitly prohibited by the Trademark Rules, the Board will usually ignore them, because they comprise either untimely evidence or unnecessary copies of timely evidence.

*Life Zone Inc. v. Middleman Group Inc*., 87 USPQ2d 1953, 1955 (TTAB 2008) (footnote omitted).  Accordingly, we will not consider the attachments to opposer's brief as such. Nonetheless, as applicant notes, most or all of the material submitted with opposer's brief was previously submitted under one of opposer's notices of reliance.  Having already

stricken opposer's untimely notices of reliance, we now consider applicant's specific objections to materials submitted with opposer's (timely) notices of reliance filed January 7 and 11, 2008.

### C.   Notice of Reliance Filed January 7, 2008

#### 1.   Registration No. 2880197

Exhibit A is a copy of the certificate of Registration No. 2880197, pleaded by opposer as a bar to applicant's registration.  This appears to be a copy of the certificate issued by the USPTO to the registrant on August 31, 2004, the date of registration.  We agree with applicant that this is not "a copy ... of the registration prepared and issued by the Patent and Trademark Office <u>showing both the current status of and current title to the registration</u>."  Trademark Rule 2.122(d)(2) (emphasis added).  We add that opposer did not take advantage of any other means to introduce this registration into evidence, *see* Trademark Rule 2.122(d)(1) (status and title copy of the registration attached to notice of opposition);[6] Trademark Rule 2.122(d)(2) (identification and introduction of registration during the taking of testimony), nor did applicant admit or stipulate to the current ownership and validity of this registration.

---

[6] For inter partes cases commenced on or after August 31, 2007, a pleading may be accompanied by copies of USPTO electronic records showing the status and title of a pleaded registration.

7

Accordingly, this registration was not properly introduced in evidence, and will not be considered.

### 2. Exhibit B & C

Exhibit B is described by opposer as "Misc. materials such as product description and sales/marketing materials," and consists of several pages, including shipping records, what appears to be a 3-page press release ("Newest NK Brand Innovation"), an article from the internet, and internal correspondence.

The categories of documents which may be submitted under a notice of reliance are strictly limited. The procedure may be used to introduce only discovery depositions; interrogatory responses, admissions or written disclosures of an adverse party, Trademark Rule 2.120(j)(3)(1); trademark registrations, Trademark Rule 2.122(d); and printed publications or official records, Trademark Rule 2.122(d). Other documents must be introduced by having them identified and authenticated through the testimony of a competent witness.

Because none of the described materials submitted by opposer may be introduced in evidence by way of a notice of reliance, they will not be considered. Nonetheless, applicant has specifically waived its objection to the introduction of the apparent press release entitled "Newest

NK Brand Innovation," which is accordingly admitted by stipulation.

Exhibit C is identified by opposer as "Internet search results," and consists of several pages of materials from the internet.  These exhibits (and the remaining internet article in Exhibit B) are not admissible under a notice of reliance, because it is not clear that they are "printed publications," within the meaning of Trademark Rule 2.122(e).  "Web pages which are not the equivalent of printed publications are not admissible under a notice of reliance."  *Life Zone*, 87 USPQ2d at 1956, *citing Paris Glove of Can. Ltd. v. SBC/Sporto Corp*., 84 USPQ2d 1856, 1858-59 (TTAB 2007); *Raccioppi v. Apogee Inc*., 47 USPQ2d 1368 (TTAB 1998).  It is not at all clear that these materials are the electronic counterparts of "books and periodicals, available to the general public in libraries or of general circulation among members of the public or that segment of the public which is relevant under an issue in a proceeding...."  TBMP § 704.08 (2d ed. rev. 2004) (and cases cited therein).

While at least one article – from the High Plains Midwest Ag Journal – might possibly exist in printed form meeting the definition of a "printed publication," this is not apparent from the document itself.  We note that opposer did not respond to this or any other evidentiary objection, and we are therefore constrained to grant applicant's

objection with respect to this item and opposer's other
internet materials in Exhibits B and C.[7]

### 3. Exhibit D

Exhibit D comprises three definitions from the Merriam-
Webster online dictionary, www.m-w.com/dictionary. The
definitions indicate that "ag," "agric," "agr," and "agro-"
are all defined generally as "of or relating to
agriculture." Applicant objects that this internet evidence
does not appear on its face to be an electronic version of a
printed publication. Objections at 4.

Although the pages do not indicate that this online
dictionary is the electronic version of Merriam-Webster's
printed reference work, the definitions appear to be of a
type that are "not subject to reasonable dispute in that
[they are] capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be
questioned." Fed. R. Evid. 201(b)(1). The Board may take
judicial notice of such dictionary definitions, *Univ. of
Notre Dame du Lac v. J.C. Gourmet Food Imp. Co*., 213 USPQ
594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed.
Cir. 1983). With the exception of "agric", these
definitions are consistent with those in a more traditional

---

[7] Even if these items were admitted, their use is limited. A
printed publication is only admissible for what it shows on its
face; unless it falls within an exception to the hearsay rule it
will not be considered to prove the truth of any matter stated in

reference source. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY, 39, 44, 43 (1993). Accordingly, we consider the definitions of "ag," "agro," and "agr" to be of record.

### D. Notice of Reliance Filed January 11, 2008

#### 1. Exhibit G

This exhibit comprises an internal memo and what appears to be a printer's proof of information about opposer's AGROMETER product. For the reasons discussed above, this evidence may not be introduced by way of a notice of reliance.

#### 2. Exhibit H & I

These exhibits are copies of Office Actions from two files of the USPTO, including one from the file of the subject application, and U.S. Patent Application No. 2006/0187449, listing Darius Akbar Sadeghi as inventor. This evidence is admissible as official records of the USPTO.

Applicant argues that the evidence from Application Serial No. 78283148 (for the mark AGTELLIGENCE) should be stricken because it relates to a different application for a different mark and is thus not relevant. While the relevance of this material is questionable, we will follow

---

the publication. *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1717 n.2 (TTAB 2007).

11

our usual practice to admit it in evidence and accord it whatever probative weight it is entitled to.

### 3. Exhibit J

This exhibit, identified by opposer as "[a]dditional current sales information and inquiries" comprises opposer's internal communications and information about opposer's products. Since it is not a printed publication – or any other type of material admissible under a notice of reliance – it will be disregarded.

### E. Summary of Evidence

In sum, the only evidence which is properly of record is (1) the testimony of Francis Marier and Eileen Watson; (2) the press release titled "Newest NK Brand Innovation"; (3) opposer's dictionary definitions; and (4) copies of USPTO office actions and a published patent application.

## II. Analysis

### A. Standing

Opposer must demonstrate its standing to pursue this opposition, *i.e.*, that it has a reasonable belief that it would be damaged by registration of applicant's mark. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982). Standing will usually be found in an opposition based on likelihood of confusion when the opposer establishes its registration or

use of a trademark, which right might be plausibly harmed by registration of applicant's mark.

As noted above, opposer failed to properly introduce the pleaded registration. Nonetheless, the testimony of Francis Marier establishes that opposer uses the mark AGROMETER in connection with "a temperature-sensing device that takes that information it gathers on high and low temperatures for the day and calculates out the growing degree units." Marier Test. at 7, 19. This testimony is sufficient to support opposer's allegations of a reasonable belief that it would be damaged by registration of applicant's mark.[8]

## B.  Priority

While opposer's testimony of its use of the AGROMETER mark is sufficient to demonstrate its standing, it is not sufficient to allow it to prevail on its likelihood of confusion claim. Had opposer properly introduced its

---

[8] Applicant argues that opposer failed to establish its standing because, while opposer alleges that it uses the AGROMETER mark under license, it failed to introduce that license or any evidence of it. We have found licensees to have standing to oppose registration. *E.g.*, *J.L. Prescott Co. v. Blue Cross Labs. (Inc.)*, 216 USPQ 1127, 1128 (TTAB 1982) (opposer that had assigned mark and obtained exclusive license from assignee held to have standing); *Chem. New York Corp. v. Conmar Form Sys., Inc.*, 1 USPQ2d 1139, 1142 (TTAB 1986). Proof of standing in a Board opposition is a low threshold, intended only to ensure that the plaintiff has a real interest in the matter, and is not a mere intermeddler. *E.g., Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999). Evidence of an opposer's actual use of a mark satisfies this requirement, even if that use is purportedly based on a license which has not been clearly established in evidence.

trademark registrations, the registrations themselves would have been sufficient to remove priority as an issue to be proved. *King Candy Co. v. Eunice King's Kitchen, Inc*., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

> While opposer has not proved ownership of a trademark registration, the Trademark Act permits opposition on the basis of prior use of "a mark or trade name previously used in the United States by another and not abandoned," Trademark Act § 2(d), *i.e.*, ownership of a common-law trademark right. But because unregistered marks are not entitled to the presumptions established by statute, *see* Trademark Act § 7(b)-(c), it is opposer's burden to demonstrate that it owns a trademark, which was used prior to applicant's mark, and not abandoned. *See* Trademark Act § 2(d).
>
> Unfortunately for opposer, there is very little record evidence of its common-law trademarks and no evidence of its priority of use.

*Life Zone*, 87 USPQ2d at 1959.

As was the case in *Life Zone*, neither Mr. Marier's testimony nor that of Ms. Watson clearly indicates <u>when</u> opposer began using its AGROMETER mark. The only date mentioned in connection with such use is June 4, 2007. Marier Test. at 18-19. While the clear implication of this testimony is that opposer was using the mark at some time before that date, no such date is specified. On the other hand, applicant may rely without further proof upon the filing date of its application as a "constructive use" date for purposes of priority. *See* Trademark Act § 7(c) (contingent upon registration); *Levi Strauss & Co. v. R. Josephs Sportswear Inc*., 36 USPQ2d 1328, 1332 (TTAB 1994).

The subject application was filed on June 29, 2005, well prior to the earliest date on which opposer's use of its mark has been established.

**III. Conclusion**

After careful consideration of the evidence and the parties' briefs, we conclude that opposer has failed to establish its priority, which is a necessary element of any claim under Trademark Act § 2(d).  We need not reach the issue of likelihood of confusion because without proof of priority, opposer cannot prevail.

*Decision*: The opposition is DISMISSED.