This Decision is a Precedent
of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Butler

**Mailed:  December 29, 2010**

**Opposition No. 91190682**

**PRAKASH MELWANI**

**v.**

**ALLEGIANCE CORPORATION**

**Before Walters, Walsh and Ritchie, Administrative Trademark Judges.**

**By the Board:**

Applicant seeks to register the mark ROYALSILK for "non-woven medical gowns and non-woven surgical drapes."[1]  As grounds for the opposition, opposer alleges priority of use and likelihood of confusion, that applicant's mark is deceptively misdescriptive, dilution, fraud, and bad faith.  Opposer pleads ownership of three registrations, two for the word mark ROYAL SILK for 1) "handkerchiefs, piece goods, all made in whole or in substantial part of silk" and "providing information in the fields of silk, the folklore of silk, the history of silk, and the proper care of silk via websites on a global computer

---

[1] Application Serial No. 77400376, filed on February 19, 2008, claiming a *bona fide* intent to use the mark in commerce.

network";[2] and 2) "wearing apparel made wholly or substantially of silk, namely, tops, shorts, skirts, boxers, scarves, sashes, mufflers";[3] and one for the mark ROYAL SILK and design for "wearing apparel made wholly or substantially of silk, namely, scarves, ties, boxer shorts, skirts, tee shirts, long-sleeved shirts, and shirts for suits."[4]  Opposer also pleads ownership of application Serial Nos. 78796502 and 78969040 for the mark ROYAL SILK for "body cream; hair conditioner; hair rinses; hair shampoo," and "watches" and "handbags," respectively.

In its answer, applicant admits that its goods are not made in whole or in part of silk, nor is it anticipated that they will be,[5] and that the marks ROYAL SILK and ROYALSILK are similar in appearance and sound.[6]  Applicant otherwise denies the essential allegations of the notice of opposition, asserts affirmative defenses, and moves to strike Count V (bad faith) on the basis that the claim is an improper attempt to include a claim of unfair competition, which is unavailable in a Board proceeding.[7]  Applicant's motion to strike Count V is embedded in its answer.

---

[2] Registration No. 2944124.

[3] Registration No. 2338016.

[4] Registration No. 3578997.

[5] Paragraph Nos. 14 and 43 of the answer.

[6] Paragraph No. 22 of the answer.

[7] The parties are reminded that the Board is not authorized to decide broader questions of infringement or unfair competition.  *See* TBMP § 102.01 (2d ed. rev. 2004).

This case now comes up on applicant's motion, filed June 15, 2010, for involuntary dismissal under Trademark Rule 2.132(a), 37 C.F.R. § 2.132(a), for opposer's failure to take any trial testimony or offer any other evidence in support of his claims. Opposer filed a response thereto on July 13, 2010.

In support of its motion, applicant argues that, since filing its answer, it has not received any communications from opposer; no discovery conference was scheduled; opposer did not conduct any discovery; and opposer did not take any testimony. Applicant points out that opposer did not introduce evidence showing ownership and record title in the pleaded registrations.

In response, opposer argues that he believed proceedings were suspended pending a ruling on applicant's motion to strike. Opposer states that his belief was reasonable because he was not contacted by applicant to arrange the discovery conference or served with applicant's initial disclosures. Opposer asks that the Board rule on applicant's motion to strike Count V and reset the entire schedule or that the Board find excusable neglect due to opposer's belief that the proceeding was suspended and reopen and reset all dates subsequent to the answer.

In response to the merits of applicant's motion for involuntary dismissal, opposer argues that, even though he did not conduct discovery or take testimony, sufficient evidence exists in the official record "to overcome applicant's challenge of lack of evidence." More particularly, opposer points to

3

applicant's admission that it does not intend to produce its goods in whole or in part of silk. Opposer contends that he is the owner of the ROYAL SILK trademarks as evidenced by his opposition papers and "the process of filing a notice of opposition." With respect to the latter point, opposer states that, when filing his extension of time to oppose on March 16, 2009, he was asked to select the mark upon which he is basing his standing; he selected his registered trademarks; and such selections were accepted by the online filing system. Opposer argues that this should be sufficient evidence to find his standing. Opposer states that, on June 17, 2009, when he filed his notice of opposition via the TTAB's online filing system, he was required to identify the marks upon which he based his notice of opposition; he referenced his registrations, which were recognized by the filing system and "automatically included in Opposer's Notice of Opposition along with automatically generated record descriptions of the goods and services related to each mark." Opposer contends that, considering both this information and the search conducted and referenced by applicant in responding to the April 7, 2008 Office Action, applicant must be familiar with opposer's ownership of his registered marks. Opposer argues that likelihood of confusion exists because the parties' marks are virtually identical in sound, appearance, connotation, and overall commercial impression and both parties offer clothing items.

4

**I.  We consider first whether opposer's pleaded registrations are of record due to opposer's action of inputting the registration numbers during the ESTTA filing protocol.[8]**

Prior to August 31, 2007, the submission with the notice of opposition or petition to cancel by a plaintiff of two copies of its pleaded registration prepared and issued by the USPTO showing both the current status of and current title to such registration was sufficient to allow such registration to be received into evidence and made part of the record for all purposes without any further action by the plaintiff.  *See* Trademark Rule 2.122(d)(1), 37 C.F.R. § 2.122(d)(1), prior to its amendment effective August 31, 2007; and TBMP §§ 317 and 704.03(b)(1)(A) (2d ed. rev. 2004).[9]  The registration copies "prepared and issued by the Patent and Trademark Office showing both the current status of and title to the registration," as contemplated by Trademark Rule 2.122(d)(1) prior to amendment, were printed copies of the registrations on which the USPTO had entered the information contained in its records at the time it prepared and issued the status and title copies.  TBMP § 704.03(b)(1)(A).  Neither plain copies of the registration certificates nor electronic copies thereof (*e.g.,* printouts of the registrations from the electronic

---

[8] ESTTA is an acronym for "Electronic System for Trademark Trials and Appeals."  ESTTA is the system for filing papers electronically with the Board.

[9] Alternatively, a plaintiff could elect to introduce its pleaded registrations, showing status and title, during its testimony period, by way of a notice of reliance or by way of the testimonial deposition of its witness.  *See* Trademark Rule 2.122(d)(2), 37 C.F.R. § 2.122(d)(2); and TBMP § 704.03(b)(1)(A) (2d ed. rev. 2004).

records of the USPTO's automated search system) were sufficient. TBMP § 704.03(b)(1)(A). *See also Bausch & Lomb Inc. v. Karl Storz GmbH & Co. KG*, 87 USPQ2d 1526, 1530 at n.4 (TTAB 2008); and *Teledyne Technologies Inc. v. Western Skyways Inc.*, 78 USPQ 2d 1203, 1205-6 (TTAB 2006).

Recognizing the increased reliability of the USPTO's publicly available electronic records, advances in technology, and society's evolving dependence on electronic media, the Board amended Trademark Rule 2.122(d)(1), 37 C.F.R § 2.122(d)(1), effective August 31, 2007, to expand the means for proving a pleaded registration. The rule now reads, in relevant part, as follows:

> A registration of the opposer or petitioner pleaded in an opposition or petition to cancel will be received in evidence and made part of the record if the opposition or petition is accompanied by an original or photocopy of the registration prepared and issued by the United States Patent and Trademark Office showing both the current status of and current title to the registration, or by a current printout of information from the electronic database records of the USPTO showing the current status and title of the registration.[10]

Thus, a plaintiff, with a pleading filed on or after August 31, 2007, is now permitted to submit "a current printout of information from the electronic database records of the USPTO showing the current status and title of the registration" as an

---

[10] In any particular case, the opposer or petitioner may have to access to and retrieve records from various and multiple USPTO databases, such as TARR ("Trademark Applications and Registrations Retrieval"), TESS ("Trademark Electronic Search System") or AOTW ("Assignments on the Web").

alternative way to make any pleaded registration of record with the pleading or at trial.[11]  *See Research in Motion Ltd. v. NBOR Corp.,* 92 USPQ2d 1926, 1928 (TTAB 2009).  Although the policy set forth by Trademark Rule 2.122(d)(1) as amended liberalizes the nature of the documentation that must be submitted, the plaintiff still must submit with its pleading such documentation.  The amendment does not contemplate a plaintiff's mere inputting of a registration number when prompted by ESTTA, the Board's on-line filing system, to list any registration upon which the plaintiff relies.  Instead, if opposer in this case intended to rely on printouts from the USPTO's electronic databases to introduce his pleaded registrations, opposer was required to electronically attach copies of such printouts as exhibits to its on-line submission of its notice of opposition, which attachments would then form part of the record; or make these registrations properly of record, in the form required by the amended rule, during trial.[12]  The fact that completion of the ESTTA filing form results in the creation of electronic records in the Board's

---

[11] The Board also removed the requirement for two copies.  Only a single copy is now necessary.

[12] The procedures specified in Trademark Rule 2.122(d)(1) are not complicated, costly or time-consuming.  The Board has the authority to require parties to follow simple, straightforward, and inexpensive procedures to prove ownership and status of pleaded registrations. *See Volkswagenwerk Aktiengesellschaft v. Clement Wheel Co.,* 204 USPQ 76, 81 (TTAB 1979).

TTABVUE system,[13] and that such records contain links to information on a pleaded registration, is for administrative ease and it is insufficient to make the pleaded registrations of record.

In view thereof, opposer's pleaded registrations are not of record and cannot be relied upon by opposer in support of his claims, or to establish that dismissal under Trademark Rule 2.132 is not warranted. Thus, the opposition must be dismissed unless opposer has established that excusable neglect exists to reopen the periods which have closed or, if not, unless applicant's admissions and the evidence of record by way of the application file are sufficient to establish opposer's claims.

**II. We now consider whether opposer has established excusable neglect so as to warrant a reopening of all periods.**

Pursuant to Fed. R. Civ. P. 6(b)(1)(B), the requisite showing for reopening an expired period is that of excusable neglect. In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 395 (1993), the Supreme Court set forth four factors to be considered, within the context of all the relevant circumstances, to determine whether a party's neglect of a matter is excusable. Those factors are: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings;

---

[13] TTABVUE refers to the "Trademark Trial and Appeal Board Inquiry System," which is the electronic record of proceedings before the Board.

8

(3) the reason for the delay, including whether it was within the reasonable control of the moving party; and, (4) whether the moving party has acted in good faith. In subsequent applications of this test by the Circuit Courts of Appeal, several courts have stated that the third factor may be considered the most important factor in a particular case. *See Pumpkin Ltd. v. The Seed Corps*, 43 USPQ2d 1582, 1586 at fn.7 (TTAB 1997).

Applying *Pioneer* to this case, there does not appear to be any measurable prejudice to applicant should the Board reopen the proceeding. Applicant has made no showing of lost evidence or unavailable witnesses. Applicant will bear no greater cost in defending this matter than it would have if opposer had properly presented its case. *See HGK Industries, Inc. v. Perma-Pipe, Inc.*, 49 USPQ2d 1156 (TTAB 1998). Nor has applicant shown that it has borne any costs which would be duplicated if reopening was granted.

There is no doubt that the length of delay and impact to this proceeding occasioned by opposer's failure to take testimony is significant. Reopening all periods and returning this proceeding back to the settlement and discovery planning conference would be necessary.

As to the reasons for the delay in acting, opposer's belief that proceedings were suspended pending disposition of applicant's motion to strike Count V was not reasonable. The motion to strike, although separately captioned, was embedded in

applicant's answer at page 8 of 13, rather than presented as a separate filing and, therefore, could be easily overlooked by the Board. It is not the Board's practice, in most cases,[14] to review pleadings for sufficiency or for the inclusion of embedded motions or requests.[15] To be clear, a party should not embed a motion in another filing, with the possible exception of a cross-motion that may be included in a response to an existing motion. That is, all new motions should be separately filed and briefed, to ensure they receive the proper attention.

Further, opposer did not proceed as if applicant's motion to strike had an effect on the proceeding. He did not file papers in opposition to the motion, or question the fact that the Board did not issue an order suspending proceedings pending disposition

---

[14] The grounds available to petition to cancel a registration which is more than five years old are limited. Trademark Act §§ 14(3) and (5), 15 U.S.C. §§ 1064(3) and (5). *See also* Trademark Rule 2.111, 37 C.F.R. § 2.111; and TBMP § 307.01 (2d ed. rev. 2004). Consequently, ESTTA requires a petitioner to state the statutory basis for cancellation of a registration more than five years old and presents only valid options for selection. In the event a petitioner believes that cancellation is proper upon a ground which does not appear on the ESTTA form, the petitioner may file a petition to cancel by paper. In this rare, latter case, it is the Board's routine practice to review the petition to cancel to ascertain that the petition to cancel a registration more than five years old is based on a valid ground.

[15] It is expected that motions embody or be accompanied by a brief. Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a). When a party embeds a motion in another filing, particularly a filing which is not routinely reviewed by Board personnel at the time of filing and which may be entered into the docket electronically, such motion does not come to the attention of the Board for docketing and determination. *Cf., Sinclair Oil Corp. v. Kendrick*, 85 USPQ2d 1032, 1033 n.2 (TTAB 2007) ("Applicant did not separately caption her motion to amend the filing basis of her application. Although there is no prohibition on incorporating a motion into a brief in response to a motion, the better practice is either to file such motion as a separate submission or, at a minimum, to caption separately any such motion.").

of the motion to strike. *Cf. Super Bakery Inc. v. Benedict*, 96 USPQ2d 1134, 1136 (TTAB 2010) (only an order of the Board formally suspending proceedings can suspend a case.) If opposer expected a ruling on the motion to strike, he easily could have moved the matter forward toward resolution by filing a response and/or requesting suspension until the matter was resolved.[16]

Both parties bear the responsibility for following the trial schedule as ordered unless and until the Board issues a suspension order or otherwise resets the trial date. In this case, when no suspension order was issued and the motion was not decided, each party was equally obligated to contact the Board to determine the status of the motion and of the case. In addition, given the passage of time, opposer earlier should have checked on the status of the motion to strike as well as the status of the proceeding.[17] *See Old Nutfield Brewing Co. v. Hudson Valley Brewing Co.,* 65 USPQ2d 1701, 1703 (TTAB 2002). Moreover, each party is equally obligated to ensure that a discovery conference takes place by the assigned deadline. *See Promgirl, Inc. v. JPC Co.,* 94 USPQ2d 1759 (TTAB 2009) (responsibility to schedule a

---

[16] Further, because the Board will generally treat an unopposed motion as conceded, *see* Trademark Rule 2.127(a), the fact that the Board did not grant the motion after opposer's time to respond to it had passed should have alerted opposer to the fact that the Board was not aware of the motion.

[17] Any party easily may check on the status of a Board proceeding using the TTABVUE database, available at http://ttabuve.uspto.gov/. A party may also call the Board during business hours to inquire as to the status of a Board proceeding.

conference and to confer on each of the topics outlined in Fed. R. Civ. P. 26 and the institution order is a shared responsibility); *Guthy-Renker Corp. v. Boyd,* 88 USPQ2d 1701, 1703 (TTAB 2008) ("it is the equal responsibility of both parties to ensure that the discovery conference takes place by the assigned deadline"); and *Influance, Inc. v. Zuker,* 88 USPQ2d 1859, 1860 n.2 (TTAB 2008) (holding discovery conference is a mutual obligation). Thus, opposer's belief that proceedings were suspended because he was not contacted by applicant to schedule the conference was not reasonable in the absence of a suspension order. *See, e.g., Super Bakery Inc. v. Benedict*, *supra*.

In considering the fourth *Pioneer* factor, there is no evidence that opposer acted in bad faith.

After careful consideration of the *Pioneer* factors and the relevant circumstances in this case, the Board finds that opposer's reasons for not actively participating in this case fail to establish excusable neglect so as to warrant a reopening of this case. Although the first and fourth *Pioneer* factors do not weigh against opposer, the second and third factors weigh heavily against opposer.

Accordingly, opposer's request to reopen proceedings is denied.

**III. We now consider whether the effects of the admissions and the evidence of record are determinative of this case.**

Opposer has not introduced any evidence into this opposition record. To the extent opposer seeks a determination on the

merits of the case, opposer is relying on applicant's admissions in its answer and on the matters of record in applicant's application file. We have reviewed such admissions and matters and find them insufficient to prove either opposer's standing or opposer's claims.

Applicant has not admitted opposer's title to, or the current status of, opposer's pleaded registrations. Thus, we must look to the evidence of record in the application file.

The entire application file, including any evidence therein submitted by the applicant, becomes part of the record in an opposition proceeding without any action by the parties. Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b). *See also Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1628 (Fed. Cir. 2009). In this case, opposer is mistaken that his standing is established because applicant was somehow made "aware" of opposer's ownership of his registrations by virtue of a search referenced by applicant in its October 7, 2008 response to the USPTO's April 7, 2008 Office Action. In that response, applicant listed seven registrations revealed by the referenced search by mark, registration number, and goods identified. The listing did not include opposer's registrations pleaded herein and the application record does not reference what applicant's search terms were, what was retrieved, and what was

13

reviewed by applicant.[18] The Board cannot infer that applicant was "aware" of opposer's registrations and find, on such an inference, that applicant effectively admitted the ownership and validity of the pleaded registrations so as to establish opposer's standing in this opposition.[19] It is incumbent upon opposer to establish his standing, in the absence of an admission or stipulation from applicant. *See Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 188 (CCPA 1982).

Accordingly, opposer does not have standing in this proceeding because there is neither an admission of standing by applicant nor record evidence that otherwise establishes opposer's standing.

Moreover, even if opposer had established its standing, applicant's admissions in its answer do not establish opposer's claim of priority and likelihood of confusion. In particular, applicant's admission that the parties' marks are similar is not by itself adequate to establish likelihood of confusion. *See In*

---

[18] As noted, opposer's pleaded registrations are not of record in the application file. However, even if they were, they would not suffice to establish the status of or opposer's ownership of such registrations at the time of filing this inter partes proceeding. The burden is on opposer to establish its ownership and status of its pleaded registrations as of the filing of the notice of opposition.

[19] The Board notes that if opposer had attached proper copies of his registrations as exhibits to the notice of opposition, making them of record, the Board might have been able to determine both standing and likelihood of confusion, based on a comparison of the marks and goods listed in the registrations and the application involved herein. However, the record still would be insufficient to determine opposer's other claims. *See* Trademark Rule 2.122(d)(1); *King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108 (CCPA 1974); and *Hurley International LLC v. Volta,* 82 USPQ2d 1339 (TTAB 2007).

*re E. I. duPont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) for the factors to be considered in a likelihood of confusion analysis. There is no evidence of record, for example, that opposer has priority,[20] that the parties' goods are related, that they travel in the same channels of trade, or of the conditions under which, and buyers to whom, sales are made. Applicant also admitted that its goods are not made of silk. Such admission is inadequate to establish that applicant committed fraud on the Office. There is no evidence, for example, concerning applicant's intent to deceive the Office with respect to a material fact, or that applicant lacked an intent to use the mark in the United States for the identified goods. *See In re Bose Corp.,* 476 F.3d 1331, 91 USPQ2d 1938 (Fed. Cir. 2009) for a discussion of the elements necessary to prove fraud. Nor does applicant's admission establish that the mark is deceptively misdescriptive. There is no evidence, for example, that consumers would likely believe the goods are made of silk. *See Anheuser-Busch, Inc. v. Holt,* 92 USPQ2d 1101, 1108 (TTAB 2009) for the factors to be considered for a mark to be found deceptively misdescriptive.

Opposer, then, has no evidence of record on which he can meet his burden of proof as plaintiff. Accordingly, applicant's motion for involuntary dismissal is granted, judgment is hereby

---

[20] In the absence of proper proof of the status of, and opposer's ownership of, his pleaded registrations, priority was not removed as an issue in this case.

15

entered against opposer and the opposition is hereby dismissed with prejudice.[21]  Trademark Rule 2.132(a), 37 C.F.R. §2.132(a).

✿✿✿

---

[21] In view of the dismissal of the opposition, consideration of applicant's motion to strike Count V is moot.