**THIS OPINION IS A
PRECEDENT OF THE T.T.A.B.**

Mailed:  August 30, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

American Lebanese Syrian Associated Charities, Inc.
v.
Child Health Research Institute

_____

Opposition No. 91190361
to application Serial No. 77583016

Opposition No. 91190708
to application Serial No. 77636727

Opposition No. 91190710
to application Serial No. 77450517

Opposition No. 91190787
to application Serial No. 77513164

Opposition No. 91190795
to application Serial No. 77513483

_____

Virginia S. Taylor and Sabina A. Vayner of Kilpatrick
Townsend & Stockton LLP for American Lebanese Syrian
Associated Charities, Inc.

Alfred C. Frawley of Preti Flaherty Beliveau & Pachios LLP
for Child Health Research Institute.

_____

Before Bucher, Cataldo and Bergsman,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Opposition No. 91190361, *et. al.*

Child Health Research Institute ("applicant") filed applications for the "Cure Kids" marks shown below.[1]

1.    Serial No. 77583016 for the mark CHILD HEALTH RESEARCH INSTITUTE CURE KIDS and design, shown below, for "charitable services, namely, medical and scientific research in the field of children's health," in Class 42. Applicant disclaimed the exclusive right to use the term "Child Health Research Institute" and the word "Kids";



2.    Serial No. 77636727 for the mark CHILD HEALTH RESEARCH INSTITUTE CURE KIDS TURNING HOPE INTO REALITY and design, shown below, for "fund raising in support of funding research into cures for childhood diseases," in Class 36. Applicant disclaimed the exclusive right to use the terms "Cure Kids" and "Child Health Research Institute";

---

[1] As will be seen in the five applications, *infra,* there is no discernable pattern to the disclaimer practice as to whether applicant disclaims the exclusive right to use "Cure Kids" or "Kids."  In Serial No. 77583016 and 77513483, the examining attorney required applicant to disclaim the exclusive right to use the word "Kids."  In Serial Nos. 77450517 and 77636727, the examining attorney required applicant to disclaim the exclusive right to use the term "Cure Kids."  In Serial No. 77513164, the examining attorney required applicant to disclaim the exclusive right use the term "Kids USA."

2



3.    Serial No. 77450517 for the mark CURE KIDS TURNING RESEARCH INTO HOPE and design, shown below, for "medical and scientific research in the field of pediatric diseases; medical research," in Class 42.  Applicant disclaimed the exclusive right to use the term "Cure Kids";



4.    Serial No. 77513164 for the mark **Cure Kids USA,** in standard character form, for "charitable fundraising in support of funding research on childhood diseases," in Class 36.  Applicant disclaimed the exclusive right to use the term "Kids USA"; and

5.    Serial No. 77513483 for the mark **Cure Kids**, in standard character form, for "charitable fundraising in support of funding research on childhood diseases," in Class 36.  Applicant disclaimed the exclusive right to use the word "Kids."

Opposition No. 91190361, *et. al.*

American Lebanese Syrian Associated Charities, Inc. ("opposer") opposed the registration of applicant's marks on the ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), 15 U.S.C. § 1025(d). Opposer alleged ownership of the two registered marks, shown below, both for "charitable fund raising in the field of children's healthcare," in Class 36, and "providing medical information concerning the treatment of children's cancer and other diseases to educate doctors and other health care providers," in Class 44.

1. Registration No. 3329145 for the mark CURE4KIDS and design, show below.[2]



2. Registration No. 3706636 for the mark CURE4KIDS, in standard character form.[3]

Opposer specifically alleged that applicant's CURE KIDS marks for fund raising for medical research in the field of childhood diseases and medical research in the field of pediatric diseases so resemble opposer's CURE4KIDS marks for

---

[2] Issued November 6, 2007.
[3] Issued November 3, 2009.

4

Opposition No. 91190361, *et. al.*

charitable fund raising and educational services in the field of childhood diseases as to be likely to cause confusion.

Applicant denied the salient allegations in the notices of opposition.

<u>Evidentiary Issues</u>

In its notice of reliance, applicant submitted "[t]rue and correct copies of historical archive of <u>cure4kids.org</u> website" (Exhibit H) and copies of four third-party registrations. Opposer objected to the introduction by applicant of pages from opposer's own website and the third-party registrations on the grounds that applicant failed "to provide any explanation as to the 'relevance of the material being offered' … nor does [applicant] specify the website from which materials in Exhibit H were obtained or the source of the documents contained in Exhibit I."[4]

The pages from opposer's website introduced by applicant through the notice of reliance include the URL and the date the pages were printed. "*If a document obtained from the Internet identifies its date of publication or date that it was accessed and printed, and its source (e.g., the URL),* it may be admitted into evidence pursuant to a notice of reliance in the same manner as a printed publication in general circulation in accordance with Trademark Rule

---

[4] Opposer's Brief, p. 9.

2.122(e)." *Safer Inc. v. OMS Investments Inc.,* 94 USPQ2d 1031, 1039 (TTAB 2010) (Emphasis in the original). However, the Board also noted in the *Safer* decision that because it was liberalizing the practice under Rule 2.122(e) to permit the introduction of material from the Internet, the Board was also requiring that the proffering party indicate the relevance of the material being offered (*e.g.*, that merely indicating that the material was relevant to the issue of likelihood of confusion was not acceptable, but the specific *du Pont* factor should be indicated). *Id.* Applicant did not indicate even generally the relevance of opposer's archival website and it is not clear on its face why applicant proffered into evidence pages from opposer's website, especially because opposer had previously introduced a copy of its website during its testimony period. Thus, applicant failed to meet the requirements for submitting the website through a notice of reliance and, therefore, opposer's objection is sustained. We will give no consideration to the archival website submitted by applicant.

Nevertheless, as noted above, opposer introduced a copy of its website as Exhibit 5 of the Dr. Yuri Quintana deposition. In this regard, once a document is admitted into evidence, it may be relied on by an adverse party and considered by the Board for any relevant purpose. *Anheuser-Busch, Inc. v. Major Mud & Chemical Co., Inc.,* 221 USPQ

1191, 1192 n.7 (TTAB 1984). Accordingly, applicant may rely on the copy of the website introduced into evidence by opposer.

With respect to the third-party registrations, as is generally the case in Board proceedings, applicant introduced the third-party registrations to challenge the strength of opposer's marks. In this regard, we note that, without waiving the objection, opposer addressed the probative value of the third-party registrations, thus indicating that opposer knew the purpose for which they were submitted. With respect to the source of the registrations, they are photocopies of certificates of registrations issued by the Office. In view of the foregoing, opposer's objection is overruled and we consider the third-party registrations for whatever probative value they may have.

### The Record

By rule, the record includes applicant's application files and the pleadings. Trademark Rule 2.122(b), 37 CFR §2.122(b).

A. Opposer's testimony and evidence.

1. Notice of reliance on the following items;

a. Certified copies of opposer's pleaded registrations prepared by the U.S. Patent and Trademark Office showing the current status of and title to the registrations;

b.    The discovery deposition of Neil J. Campbell, the Chairman of the Board of Directors of applicant, with attached exhibits;

c.    Applicant's responses to opposer's first and second set of interrogatories;

d.    Applicant's responses to opposer's requests for admission; and

e.    A copy of applicant's website as of July 16, 2010, the date that appears on the pages as they were printed.

2.    The testimony deposition of Dr. Yuri Quintana, opposer's Director of Education and Informatics in the International Outreach Program, with attached exhibits; and

3.    The testimony deposition of Brenda Abshure, opposer's Senior Vice President of Gift Planning, with attached exhibits.

B.    Applicant's evidence.

Applicant filed a notice of reliance on the following items:[5]

---

[5] Applicant referenced in its notice of reliance the testimony and evidence submitted by opposer's notice of reliance.  As indicated above, when evidence is made of record by one party it may be referred to by any other party for any purpose permitted by the Rules of Evidence.  *Anheuser-Busch, Inc. v. Major Mud & Chemical Co., Inc.,* 221 USPQ at 1192 n.7.  Therefore, it was not necessary for applicant to state its reliance on opposer's evidence in applicant's own notice of reliance.

1.    Copies of three third-party registrations for CURE KIDS CANCER owned by the same entity and one third-party registration for COACHES CURING KIDS CANCER; and

2.    Opposer's responses to applicant's interrogatories.

## Standing and Priority

Because opposer has properly made its pleaded registrations of record, opposer has established its standing, *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982), and Section 2(d) priority is not an issue in this case as to the marks and the services covered by the registrations.  *King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974).

## Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion.  *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *see also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003).

A.   The similarity or dissimilarity and nature of the services as described in the applications and registrations.

When determining whether services are related, we must consider the services as they are identified in the respective descriptions of services.  *Paula Payne Products v. Johnson Publishing Co.*, 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods" or services).  *See also Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed").

A comparison of the services is illustrated in the table below.

| Opposer | Applicant |
|---|---|
| | |
| Charitable fund raising in the field of children's healthcare | CHILD HEALTH RESEARCH INSTITUTE CURE KIDS and design (Serial No. 77583016) charitable services, namely, medical and scientific research in the field of children's health<br><br>CHILD HEALTH RESEARCH INSTITUTE CURE KIDS TURNING HOPE INTO REALITY and design (Serial No. 77636727) fund raising in support of funding research into cures for childhood diseases<br><br>**Cure Kids USA** (Serial No. 77513164) and **Cure Kids** (Serial No. 77513483) charitable fundraising in support of funding research on childhood diseases |
| | |
| Providing medical information concerning the treatment of children's cancer and other diseases to educate doctors and other health care providers | CHILD HEALTH RESEARCH INSTITUTE CURE KIDS and design (Serial No. 77583016) charitable services, namely, medical and scientific research in the field of children's health<br><br>CURE KIDS TURNING RESEARCH INTO HOPE and design (Serial No. 77450517) medical and scientific research in the field of pediatric diseases; medical research |

Applicant's fund raising in support of funding research into cures for childhood diseases and charitable fundraising

11

in support of funding research on childhood diseases are legally identical to opposer's charitable fund raising in the field of children's healthcare.

With respect to applicant's "charitable services, namely, medical and scientific research in the field of children's health," applicant prefaced the research services as falling within the ambit of charitable services. The qualifying term "charitable services" is broad, and it encompasses both charitable fundraising to support research and the distribution of collected funds to support research. Accordingly, we have construed applicant's services as including fundraising for medical research in the field of children's health. In view of the foregoing, we find that applicant's charitable services, namely, medical and scientific research in the field of children's health, is related to opposer's charitable fundraising in the field of children's healthcare.

Also, we find that applicant's charitable services, namely, medical and scientific research in the field of children's health and medical and scientific research in the field of pediatric diseases are related to opposer's services of providing medical information concerning the treatment of children's cancer and other diseases to educate doctors and other health care providers. One purpose of medical research is to provide information for treating

Opposition No. 91190361, *et. al.*

diseases.   In its "Case for Support of Mission" document (FY 2009), applicant identifies its mission*, inter alia,* as finding cures for pediatric diseases and "to accelerate development and commercialization of strongly needed products. … Ultimately, new therapies and diagnostics that allow children to live longer and healthier lives are the key deliverables."[6]   Also, medical researchers may need access to medical information and, therefore, applicant's researchers may access sources of medical information such as those provided by opposer.   In this regard, through its CURE4KIDS services, opposer "brings online collaboration tools to health care providers worldwide and provides them with medical knowledge on pediatric catastrophic diseases, with a focus on cancer.   The Cure4Kids Web site (*www.cure4Kids.org*) offers a digital research library."[7] Thus, opposer's services of providing medical information may be rendered in connection with medical research.   In addition, opposer's CURE4KIDS website offers educational content[8] and it also offers an open "virtual community" where health professionals can "share innovations that will

---

[6] Campbell Dep., Exhibit 6, Bates Nos. 0026 and 0028.
[7] Quintana Dep., Exhibit 2, Bates No. ALSAC000055.  *See also* Exhibit 3, Bates No. ALSAC000024 ("Cure4Kids … has become … a research library").
[8] *Id.* at Bates No. ALSAC000056.

Opposition No. 91190361, *et. al.*

inspire new applications of tools and methodologies and catalyze new collaborations among members."[9]  Thus, opposer's services for providing medical information may be used as a tool for sharing medical research innovations. Accordingly, consumers are likely to assume that medical research services and providing medical information when rendered under similar marks are likely to emanate from a single source.

B.  <u>The similarity or dissimilarity of established, likely-to-continue trade channels and classes of consumers</u>.

Because applicant's fund raising services in support of funding research into cures for childhood diseases and charitable fundraising in support of funding research on childhood diseases are legally identical to opposer's charitable fund raising in the field of children's healthcare, the marketing channels of trade and targeted classes of consumers and donors are the same.  *See Genesco Inc. v. Martz,* 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade"); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be

---

[9] *Id.* at Bates No. ALSAC000060.

presumed to travel in the same channels of trade, and be sold to the same class of purchasers").

As indicated above, applicant's charitable fundraising services, namely, supporting research on childhood diseases and cures therefor, and opposer's charitable fund raising in the field of children's healthcare are both charitable fundraising services in the field of children's healthcare. Because there are no limitations in the description of services in opposer's registration or applicant's application, it is presumed that the charitable fundraising services of both parties move in all marketing channels normal for those services, and that they are available to all classes of purchasers and donors. *See Jansen Enterprises Inc. v. Rind*, 85 USPQ2d 1104, 1108 (TTAB 2007); *Toys R Us v. Lamps R Us,* 219 USPQ 340, 343 (TTAB 1983).

Finally, we find that the channels of trade and classes of consumers overlap with respect to opposer's services of providing medical information concerning the treatment of children's cancer and other diseases to educate doctors and other health care providers and applicant's charitable services, namely, medical and scientific research in the field of children's health and medical and scientific research in the field of pediatric diseases. As noted in the previous section, opposer's CURE4KIDS website offers a digital research library which may be used for medical

15

research.  Furthermore, opposer's CURE4KIDS website offers a forum where health professionals can share innovations.

C.    The strength of opposer's marks.

Applicant argues that opposer's marks are not inherently distinctive because they are comprised of common words (*i.e.,* "cure" and "kids").  Because applicant did not file counterclaims to cancel opposer's pleaded registrations, we do not construe applicant's argument as an attack on the validity of the registrations; rather, applicant's argument is simply the contention that opposer's marks are weak and, therefore, entitled to only a narrow scope of protection or exclusivity of use.  Trademark Rule 2.106(b)(2)(ii) ("An attack on the validity of a registration pleaded by an opposer will not be heard unless a counterclaim or separate petition is filed to seek cancellation of such registration").

In determining the strength of a mark, we consider both its inherent strength based on the nature of the mark itself and its commercial strength, based on the marketplace recognition value of the mark.  *See Tea Board of India v. Republic of Tea Inc.,* 80 USPQ2d 1881, 1899 (TTAB 2006); McCarthy on Trademarks and Unfair Competition § 11:83 (4th ed. 2011) ("The first enquiry focuses on the inherent potential of the term at the time of its first use.  The second evaluates the actual customer recognition value of

the mark at the time registration is sought or at the time the mark is asserted in litigation to prevent another's use.")

1.  The inherent strength of opposer's marks.

Applicant has submitted four third-party registrations owned by two entities that use variations of the words "Cure" and "Kids" in connection with health care and fundraising. The third-party registrations are listed below.

a.  Children's Miracle Network owns three registrations for the mark CURE KIDS CANCER and design shown below.



1.  Registration No. 3691050 for "radio and television broadcasting in the field of children and children's issues," in Class 38.[10] Registrant disclaimed the exclusive right to use the word "Kids."

2.  Registration No. 3618210 for "providing health care information," in Class 44.[11] Registrant disclaimed the exclusive right to use the term "Cure Kids Cancer."

---

[10] Issued October 6, 2009.
[11] Issued May 12, 2009.

3.     Registration No. 3168209 for "radio and television programming and production of radio and television programs in the field of children and children's issues," in Class 41.[12]  Registrant disclaimed the exclusive right to use the term "Cure Kids Cancer."

b.     Curing Kids' Cancer Inc. owns Registration No. 3201854 for the mark COACHES CURING KIDS' CANCER, in standard character form, for "fundraising services, namely fundraising for childhood cancer research," in Class 36.[13]

While not evidence of use, the third-party registrations may be used in the manner of a dictionary to show that a mark or a portion of a mark is descriptive or suggestive of the oposer's services.  *Tektronix, Inc. v. Daktronics, Inc.,* 187 USPQ 588, 592 (TTAB 1975) (the third-party registrations may be considered in the same manner as a dictionary to show a possible meaning or significance in a particular trade).  These registrations corroborate the common sense conclusion that the term "Cure4Kids" when used in connection with "medical and scientific research in the field of children's health" and "fund raising in support of funding research into cures for childhood diseases" is highly suggestive, if not descriptive, because it describes the purpose of the fund raising and medical research (*i.e.,*

---

[12]  Issued May 12, 2009.
[13]  Issued January 23, 2007.

to cure children). However, because opposer's marks have been registered and they are not subject to a counterclaim for cancellation, the registrations are entitled to the presumptions accorded by Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b) (*i.e.,* prima facie evidence of the validity of the registered mark and of the registration of the mark, of the ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration). Thus, opposer's marks cannot be treated as merely descriptive; at worst the wording in opposer's marks must be viewed as highly suggestive. Further, even if we agreed that opposer's marks were inherently weak marks, that would not be fatal to finding likelihood of confusion because even weak marks are entitled to protection against confusion. *King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 109 (CCPA 1974).

    b. <u>The commercial strength of opposer's marks</u>.

With respect to the commercial or market strength of opposer's CURE4KIDS marks, the evidence shows that opposer has raised substantial amounts of money for medical research from donors and through special events for medical research. Furthermore, opposer's educational outreach programs have provided services to many medical professionals, parents and patients. However, opposer's CURE4KIDS marks are generally

used in connection with ST. JUDE'S CHILDREN'S RESEARCH HOSPITAL. *See, e.g.,* opposer's website shown below.[14]

*See also* Quintana Exhibit 6, opposer's CD-ROM "developed to help promote awareness of [opposer's] program."[15] The title is displayed in the following manner:

International Outreach
St. Jude's Children's Research Hospital

The St. Jude's logo is prominently displayed on the left-hand side of the disc and CURE4KIDS appears at the bottom as follows:

*Finding cures. Saving …*

www.stjude.org/inte …

www.Cure**4**Kids

Thus, it is not clear to what extent consumers have had an opportunity to disassociate CURE4KIDS from ST. JUDE'S CHILDREN'S HOSPITAL. While consumers have been frequently exposed to the CURE4KIDS mark, it has not been as a stand alone mark. In this regard, opposer failed to introduce any

---

[14] Quintana Dep., Exhibit 5.
[15] Quintana Dep., p. 61. The CD-ROM cannot be legibly reproduced.

independent media articles referencing and/or highlighting the renown of opposer's CURE4KIDS marks. *Cf. Bose Corp. v. QSC Audio Products Inc.,* 293 F.3d 1367, 63 USPQ2d 1303, 1308 (Fed. Cir. 2002) ("those who claim fame for product marks that are used in tandem with a famous house mark can properly be put to tests to assure their entitlement to the benefits of fame for the product marks"). On the record before us, the evidence does not support finding that opposer's CURE4KIDS marks are commercially strong marks.

On the other hand, as part of its defense, applicant argued that opposer's marks are weak marks. However, applicant has not demonstrated that opposer's marks are commercially weak. The third-party registrations introduced by applicant are not evidence that those marks have been used at all, let alone used so extensively that consumers have become sufficiently conditioned by their usage that they can distinguish between such marks on the bases of minute differences. The probative value of third-party trademarks depends entirely upon their usage. *E.g., Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 192 USPQ 289, 294 (2d Cir. 1976) ("The significance of third-party trademarks depends wholly upon their usage. Defendant introduced no evidence that these trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers."). As the Court pointed

out in *Lilly Pulitzer, Inc. v. Lilli Ann Corp.*, 376 F.2d 324, 153 USPQ 406, 407 (C.C.P.A. 1967), "the existence of these registrations is not evidence of what happens in the market place or that customers are familiar with their use." Where, as here, the "record includes no evidence about the extent of [third-party] uses … [t]he probative value of this evidence is thus minimal." *See also Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542, 1545 (Fed. Cir. 1992) ("As to strength of a mark, however, registration evidence may not be given *any* weight").

In view of the foregoing, we find on this record that the term CURE4KIDS is highly suggestive but that the evidence regarding the commercial strength of that term is neutral.

D.   The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *In re E. I. du Pont De Nemours & Co.,* 177 USPQ at 567. In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 8 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988).

In determining the similarity of the marks, we are mindful that the marks are to be compared in their entireties.  However, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties. … That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark."  *In re National Data Corporation*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).  *See also Tektronix, Inc. v. Daktronics, Inc.,* 534 F.2d 915, 189 USPQ 693, 694 (CCPA 1976) ("the mere presence of a common, highly suggestive portion [of a mark] is usually insufficient to support a finding of likelihood of confusion"); *Knight Textile Corp. v. Jones Investment Co.,* 75 USPQ2d 1313, 1316-17 (TTAB 2005) (even though there are no discernible differences between "essentials" portions of parties' respective marks [NORTON McNAUGHTON ESSENTIALS vs. ESSENTIALS], since the word "essentials" is highly suggestive, consumers will be able to distinguish the marks by looking at other elements of the marks); *Alpha Industries, Inc. v. Alpha Microsystems*, 227 USPQ 67, 71 (TTAB 1983) ("Since the testimony and other evidence establishes to our satisfaction that the term "micro" has

descriptive or highly suggestive significance in the computer field, this part of applicant's mark is entitled to less significance since potential purchasers are likely to look to the remainder of the mark for origin-indicating significance").

1. **Cure Kids USA** (Serial No. 77513164) and **Cure Kids** (Serial No. 77513483) v. CURE4KIDS, in standard character form.

Applicant's marks **Cure Kids USA** and **Cure Kids** are similar to opposer's mark CURE4KIDS, in standard character form, because they look alike and sound alike.  Furthermore, they have the same meaning and engender the same commercial impression (*i.e.,* to cure children).

2. **Cure Kids USA** (Serial No. 77513164) and **Cure Kids** (Serial No. 77513483) v. CURE4KIDS and design.

Applicant's marks **Cure Kids USA** and **Cure Kids** are similar to opposer's mark CURE4KIDS and design mark to the extent that they share the words "Cure" and "Kids." Accordingly, the marks are similar in terms of appearance, sound, meaning and commercial impression.  Unlike applicant's compound marks discussed below, there is nothing in applicant's standard character marks to distinguish them from opposer's compound mark.  While we acknowledge that opposer's mark has a design element, it is the term CURE4KIDS that is the dominant element of opposer's compound mark, both because of its visual prominence and because it

24

would be used to reference the services of opposer by those who would speak of them.  Accordingly, we find that applicant's standard character marks **Cure Kids USA** and **Cure Kids** are similar to opposer's compound mark.

> 3. CHILD HEALTH RESEARCH INSTITUTE CURE KIDS and design (Serial No. 77583016), CHILD HEALTH RESEARCH INSTITUTE CURE KIDS TURNING HOPE INTO REALITY and design (Serial No. 77636727) and CURE KIDS TURNING RESEARCH INTO HOPE and design (Serial No. 77450517) vs. opposer's CURE4KIDS and CURE4KIDS and design marks.

As stated in the preceding sections, applicant's marks are similar to opposer's marks because they share the words "Cure" and "Kids."  On the other hand, the marks are different because applicant's marks include other source identifying words and designs.  The similar terms "Cure Kids" and "CURE4KIDS" are highly suggestive and, therefore, contribute relatively less to the marks' commercial impression.  When encountering the marks of the parties, the relevant public will recognize these suggestive terms for what they are, the purpose of the fund raising and medical research.  The design elements of applicant's compound marks, as well as the additional wording in applicant's marks, are sufficient to distinguish applicant's marks from both of opposer's marks.  The relevant public is not likely to assume a relationship between the parties or services because of the use of these highly suggestive terms in their respective marks.  The additional matter, both words and

25

designs, in applicant's marks distinguish them from opposer's marks when they are viewed in their entireties. Thus, when considering the totality of the marks and the nature of the terms CURE KIDS and CURE4KIDS in connection with their respective services, we find that applicant's marks (1) CHILD HEALTH RESEARCH INSTITUTE CURE KIDS and design, (2) CHILD HEALTH RESEARCH INSTITUTE CURE KIDS TURNING HOPE INTO REALITY and design, and (3) CURE KIDS TURNING RESEARCH INTO HOPE and design, are not similar to opposer's CURE4KIDS marks.

E.   Balancing the factors.

1.   Opposition Nos. 91190787 and 91190795

With respect to applicant's marks **Cure Kids USA** (Serial No. 77513164) and **Cure Kids** (Serial No. 77513483), because those marks are similar to opposer's CURE4KIDS mark, in standard character form (Registration No. 3706636), the services are in part identical, and the presumption that the channels of trade and classes of consumers are the same, we find that applicant's marks **Cure Kids USA** and **Cure Kids** for "charitable fundraising in support of funding research on childhood diseases," so resemble CURE4KIDS and CURE4KIDS and design both for "charitable fund raising in the field of children's healthcare" and "providing medical information concerning the treatment of children's cancer and other

26

diseases to educate doctors and other health care providers" as to be likely to cause confusion.

    2.   <u>Opposition Nos. 91190361, 91190708 and 91190710</u>

Despite the similarity of the services, channels of trade and classes of consumers, we find that the dissimilarity of the marks in their entireties outweighs these other factors. The highly suggestive terms CURE KIDS and CURE4KIDS in the respective marks of the parties are not a sufficient basis upon which to find that there is a likelihood of confusion. Accordingly, we find that applicant's marks CHILD HEALTH RESEARCH INSTITUTE CURE KIDS and design for "charitable services, namely, medical and scientific research in the field of children's health" (Serial No. 77583016), CHILD HEALTH RESEARCH INSTITUTE CURE KIDS TURNING HOPE INTO REALITY and design for "fund raising in support of funding research into cures for childhood diseases" (Serial No. 77636727), and CURE KIDS TURNING RESEARCH INTO HOPE and design for "medical and scientific research in the field of pediatric diseases; medical research" (Serial No. 77450517) are not likely to cause confusion with opposer's CURE4KIDS marks.

    <u>Decision</u>:

Opposition No. 91190787 is sustained and application Serial No. 77513164 is refused registration.

27

Opposition No. 91190361, *et. al.*

Opposition No. 91190795 is sustained and application Serial No. 77513483 is refused registration.

Opposition No. 91190361 is dismissed and a notice of allowance for application Serial No. 77583016 will issue in due course.

Opposition No. 91190708 is dismissed and application Serial No. 77636727 will register in due course.

Opposition No. 91190710 is dismissed and application Serial No. 774505517 will register in due course.