**KING CANDY COMPANY, Appellant,**
v.
**EUNICE KING'S KITCHEN, INC.,**
**Appellee.**
**Patent Appeal No. 9245.**

United States Court of Customs
and Patent Appeals.
June 6, 1974.

J. Timothy Hobbs, Washington, D. C.
(Mason, Fenwick & Lawrence, Washington, D. C.), attorney of record, for appellant.

William B. Mason, Arlington, Va.
(Mason, Mason & Albright, Arlington, Va.), attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 178 USPQ 121 (1973), dismissing the opposition of appellant to the registration by appellee of MISS KING'S used on cakes, canned specialty cakes and fruit cakes since August 1, 1948.[1]  Appellant

1. Application serial No. 343,566, filed November 14, 1969.

relied on its existing registrations of KING'S [2] and KATHRYN KING'S,[3] used on candy.

We affirm.

The record consists of the pleadings; appellant's pleaded registrations; appellee's application file; stipulated evidence on behalf of appellee establishing its 1948 date of first use, the growth in sales to the then current annual level of $100,000 and the sale of substantially all of appellee's cakes in cans; appellee's Notice of Reliance and copies of 23 third-party registrations made of record by said notice.

Neither party took testimony.

The board dismissed the opposition, finding no likelihood of confusion between MISS KING'S as applied to cakes and KING'S as applied to candy.

The board refused to consider appellant's other pleaded registration, KATHRYN KING'S, on the ground that the stipulated evidence established appellee's date of first use to have been prior to the filing date of the KATHRYN KING'S registration.

## OPINION

■ We agree with the board that confusion is unlikely between KING'S used on candy and MISS KING'S used on cakes.

■ Appellee, as did the board, emphasizes the view that KING'S is "weak" and "entitled to limited protection." The description of marks as "weak" or "strong," and references to the "breadth of protection" to be given a mark, have served as a convenient type of shorthand in the literature of opinions concerned with likelihood of confusion. We employed such language in *King-Kup Candies, Inc. v. King Candy Co.*, 48 CCPA 948, 288 F.2d 944, 129 USPQ 272 (1961) when we described KING'S as being "almost as weak a mark as can be found." Such expres-

sions, however, should not obfuscate the basic issue. Confusion is confusion. The likelihood thereof is to be avoided, as much between "weak" marks as between "strong" marks, or as between a "weak" and a "strong" mark. Similarly, the statute, by providing remedies to trademark owners, enables those *owners* to protect their marks. It is through such owner-action that the public is protected from confusion. As we said in In re E. I. duPont deNemours & Co., 476 F.2d 1357, 177 USPQ 563 (1973), neither the grant of registration nor its refusal automatically protects against confusion.

The expressions "weak" and "entitled to limited protection" are but other ways of saying, as the board went on to recognize in its opinion herein, that confusion is unlikely because the marks are of such non-arbitrary nature or so widely used that the public easily distinguishes slight differences in the marks under consideration as well as differences in the goods to which they are applied, even though the goods of the parties may be considered "related." That is the present case.

The twenty-three registrations made of record by appellee do not, as appellee argues, establish widespread use of KING or KING'S. They do, however, indicate a widespread adoption and registration thereof.

We are convinced that the public would readily distinguish the differences between KING'S and MISS KING'S and between candy and cakes. Hence confusion is not likely when said marks are applied, respectively, to said goods.

■ Appellant argues that the goods are sold in the same channels of trade, but submitted no evidence in support of that contention. Appellant also charges the board with error for having considered the absence of actual confusion over a period of 20 years. As set forth

2. Registration No. 571,464, filed March 3, 1948, dated March 10, 1953, first use in 1907 being asserted.

3. Registration No. 538,173, filed October 7, 1949, dated February 20, 1951, first use in 1949 being asserted.

in In re E. I. duPont deNemours & Co., supra, such lack of confusion is an evidentiary element to be considered. In the absence of evidence to the contrary, such lack of actual confusion over so many years must be considered in this case as supportive of a finding that confusion is not likely in the future.

■ Both parties have requested that we ignore the board's refusal to consider appellant's registration of KATHRYN KING'S and that we rule on the issue of whether confusion is likely when that mark and MISS KING'S are used on their respective goods. Both parties have briefed the issue here. The board's holdings, respecting the nature of opposer's mark, the differences in the marks and the goods, and the lack of actual confusion over many years, indicate that no useful purpose would be served by subjecting the parties to further proceedings below in this case. We think considerations similar to those listed above are equally applicable to this issue and that potential purchasers would readily distinguish KATHRYN KING'S candy from MISS KING'S cakes.

■ Because we find no likelihood of confusion between appellee's mark and either of appellant's registered marks, the refusal of the board to consider appellant's KATHRYN KING'S registration is moot. That refusal was error, as is evident from our opinions in Contour Chair-Lounge Co., Inc., v. The Englander Co., Inc., 51 CCPA 833, 324 F.2d 186, 139 USPQ 285 (1963); David Crystal, Inc. v. Shelburne Shirt Co., Inc., 59 CCPA 1248, 465 F.2d 926, 175 USPQ 112 (1972); and Anderson, Clayton and Co. v. Krier, 478 F.2d 1246, 178 USPQ 46 (CCPA, 1973).

By fortuitous circumstance, a well-reasoned article concerning the point of law on which the board finds itself in disagreement with this court was published at about the time this case was heard.[4] The author concludes that reason supports the view long held by this court, rather than that expressed by the board in the opinion below and in its opinion on remand[5] in Anderson, Clayton, supra.

■ We believe it appropriate to add merely a short list of the fundamental reasons supporting our statement of the law. In an opposition, the board must consider existing registrations of subsequent-user opposers, because (1) the statute, 15 U.S.C. §§ 1051–1127, requires such consideration; (2) the basic question in an opposition is applicant's right to register (not merely, as the board says, whether the opposer "will be damaged"); (3) in determining applicant's right to register, the entire statute, including Section 2(d), must be considered; (4) Section 2(d) says an applicant can register, *unless* his mark is likely to cause confusion with a mark *"registered* in the Patent Office *or* * * * previously used * * *"* (emphasis added); (5) the board's requirement that the registrant-opposer also be a prior user impermissibly negates the statutory distinction ("or") in Section 2(d) between a registered mark and a previously-used-but-unregistered mark, would permit simultaneous registration of the same mark for the same goods to different parties, and disregards—in effect conflicts with—Patent Office Rule 2.106(b), which forbids any attack (other than a request for cancellation) on the validity of a registration in an opposition; (6) the board's position is unsupported by either statutory or definitive decisional authority;[6] and (7) an opposer who, in the language of Section 13, "believes he would be damaged," may in fact suffer damage to his *registration,* (Sec. 7(b)), if the applicant's mark is registered.

4. Fletcher, Anthony L., "May a Prior Registrant but Subsequent User Oppose Subsequent Application by the Prior User?"; The Trademark Reporter, (January-February, 1974), Volume 64, page 1.

5. 178 USPQ 637 (TTAB, 1973).

6. See footnote 18 of the article noted in footnote 4, above.

As the board emphasized, registration is not compulsory. We recognize that an applicant-prior user may by delay lose the opportunity to effect cancellation. The answer to that concern resides in the statute. The effect of the entire statute in such instances is to upgrade the register and, so far as *registration* is concerned, to balance the equities, favoring the long-standing, nonfraudulent registration against the prior user who delays too long in electing to seek registration. The right to exclusive use, in such cases, may be determined in an appropriate action in a district court. We do not regard that result as undesirable. If it were, its correction would be grist for the Congressional mill, not for ours or the board's.

Affirmed.