Hearing:                                                Paper No. 45
November 1, 2001      **THIS DISPOSITION**                EWH
                 **IS NOT CITABLE AS PRECEDENT**
                    **OF THE T.T.A.B.**

UNITED STATES PATENT AND TRADEMARK OFFICE

---

Trademark Trial and Appeal Board

---

INTERLEGO AG and LEGO SYSTEMS, INC.
and KIRKBI AG, joined as party plaintiff

Opposers,

v.

ABRAMS/GENTILE ENTERTAINMENT, INC.
and MJJ MULTIMEDIA LLC joined as
party defendant

Applicants

---

Opposition No. 103,612 to Application Ser. No.
75/011,293 filed on October 27, 1995.

---

David Ehrlich of Fross, Zelnick, Lehrman & Zissu for
opposers.

James David Jacobs of Baker & McKenzie for applicants.

---

Before Cissel, Hanak and Quinn, Administrative Trademark
Judges.

Opinion by Hanak, Administrative Trademark Judge:

Applicants seek to register MEGO in typed drawing form

for "children's toys, namely, action figures, vehicles, dolls and accessories therefore." The intent-to-use application was filed on October 27, 1995.

This application has been opposed on the basis that long prior to October 1995, opposers both registered and used in the United States the mark LEGO for a wide array of toys, and that the contemporaneous use of the marks MEGO and LEGO on toys is likely to cause confusion, mistake or deception pursuant to Section 2(d) of the Trademark Act.

Applicants filed an answer which denied the pertinent allegations of the Notice of Opposition. Both opposers and applicants filed briefs and were present at a hearing held before this Board on November 1, 2001.

Priority is not an issue in this proceeding because opposers have properly made of record certified status and title copies of their four registrations of the mark LEGO covering a wide array of toys. King Candy Co. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). Two of these four registrations are particularly pertinent because they depict the mark LEGO in typed drawing form without any background design. The first of

2

these two registrations is Registration No. 1,018,875 issued August 26, 1975 for, among other goods, "doll figures and vehicular toys." The second registration is Registration No. 2,245,652 and it encompasses, among other goods, "toy figures, toy vehicles and dolls." In addition, the evidence of record demonstrates that opposers have continuously used in the United States the mark LEGO since 1975, if not much earlier, on a wide array of toys. Indeed, at page 11 of their brief, applicants state that opposers have used the LEGO mark in the United States since at least 1961.

In any likelihood of confusion analysis two key, although not exclusive, considerations are the similarities of the goods and the similarities of the marks. Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). ("The fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.")

Considering first the goods, they are, at least in part, legally identical. As previously noted, applicants

seek to register MEGO in typed drawing form for toy action figures, toy vehicles and dolls. Opposers have previously registered LEGO in typed drawing form for toy figures, toy vehicles and dolls.

Considering next the marks, we note at the outset that when the goods are at least in part legally identical, as is the case here, "the degree of similarity [of the marks] necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992). Obviously, the marks LEGO and MEGO are extremely similar in that they differ simply by one letter. We believe that many adults would not notice this very minor difference in the two marks. Moreover, it is obvious that many purchasers of toys are children, who are even less likely to notice this slight difference in the two marks.

Applicants devote less than one page of their brief to a discussion of the differences between the two marks. With regard to visual appearance, applicants merely state the obvious, namely, that their mark begins with the letter "M" and that opposers' mark begins with the letter "L."

4

(Applicant's brief page 10).

With regard to the purported dissimilarities in sound and connotation, applicants rely upon the testimony of their chairman Martin Abrams who testified that the mark MEGO was inspired by the fact that many years ago his little brother, when the family was about to take a trip, would state: "Me go too. Me go too." (Abrams deposition page 14). From this origination of the MEGO mark applicants argue that their mark differs from the LEGO mark in pronunciation in that their mark would be pronounced as "me go" whereas opposers' mark would be pronounced in a manner that it sounds like the word "lay." There are two problems with applicants' argument. First, Mr. Abrams has conceded that applicants have made no use whatsoever of the MEGO mark. (Abrams deposition pages 35 and 78). Thus, applicants have certainly not educated the public to pronounce their mark MEGO as "me go." A much more logical pronunciation of applicants' mark MEGO is that it would be pronounced as a girl's name (Meg) followed by a long "O" sound. Likewise, the well recognized pronunciation of opposers' mark LEGO is the word "leg" followed by a long

5

"O" sound. Obviously, the feminine name "Meg" and the word "leg" are extremely similar in sound. Indeed, they rhyme. Second, even if applicants had hypothetically made some effort to educate the public to pronounce their mark MEGO as "me go," the fact remains "that there is no correct pronunciation of a trademark." In re Belgrade Shoe, 411 F.2d 1352, 162 USPQ 227 (CCPA 1969). Even if applicants were in the to future make efforts in attempting to educate the public as to how to pronounce their mark, we are of the firm belief that a significant portion of the public would still pronounce applicants' mark as "Meg O." This is particularly true given the great fame of opposers' LEGO mark, which we will discuss later in this opinion.

Finally, in terms of connotation, applicants argue at page 10 of their brief that LEGO has no meaning whereas their mark MEGO brings to mind "a child's desire to accompany another on a trip ('me go')." Once again, the fallacy with applicants' argument is that consumers would know the derivation of the mark MEGO. Given the fact that consumers do not know this derivation, both marks are

6

similar in that they lack any connotation.

In sum, given the fact that applicants' and opposers' goods are, in part, legally identical, and the fact that the two marks are extremely similar, we find that their use on toys is likely to result in confusion, especially when one considers that many purchasers of toys are children.

We are of the firm belief that there exists a strong likelihood of confusion resulting from the contemporaneous use of these two marks on toys. However, if there were even the slightest doubt on the issue of likelihood of confusion (which there is not), this doubt is totally removed when one recognizes that oppposers' mark LEGO is one of the most famous toy marks in the United States. To elaborate, the Director of Marketing for opposer Lego Systems, Inc. (Charles McLeish) testified that in the ten year period preceding March 2000, opposers' total United States sales of LEGO toys exceeded 1 billion dollars. During that same time period, opposers' advertising expenditures for LEGO toys in the United States exceeded 100 million dollars. According to Mr. McLeish's testimony, these sales figures placed LEGO toys in the top five brands

7

of toys in the United States.  Finally, Mr. McLeish testified that market studies demonstrated that approximately two-thirds of United States households with children fourteen years of age and younger owned at least one LEGO toy. (McLeish deposition pages 24 to 26).

Our primary reviewing Court has made it crystal clear that famous trademarks enjoy a very broad scope of protection. Kenner Parker Toys Inc. v. Rose Art Industries Inc., 963 F.2d 350, 22 USPQ2d 1453, 1456 (Fed. Cir. 1992). Given the fact that opposers have demonstrated that in the United States their LEGO trademark is a very famous mark for toys, there is yet another compelling reason supporting our finding that there exists a likelihood of confusion resulting from the contemporaneous use of LEGO and MEGO on identical toys.

One additional comment is in order.  At pages 11 and 12 of their brief, applicants argue that the lack of evidence of actual confusion "weighs heavily against finding a likelihood of confusion."  Of course, as previously noted, applicants have yet to even commence use of their MEGO mark.  Applicants' unusual argument is

premised on the fact that prior to 1982, a company unrelated to applicants made use of the mark MEGO on toys and that purportedly there occurred no instances of actual confusion involving opposers' LEGO toys and the MEGO toys of this unrelated company. Two comments are in order. First, proof of actual confusion is not a prerequisite to a finding of likelihood of confusion. Second, given the fact that this unrelated company ceased use of the mark MEGO approximately two decades ago, it is highly unlikely that opposers would have retained documentation of instances of actual confusion had they existed. As for applicants' argument that there still exist old MEGO toys in the market today, applicants acknowledge that this market is "fueled by collectors and toy aficionados." (Applicants' brief page 12). In other words, what few old MEGO toys exist today are not being marketed to children, the normal consumers of toys, but rather are being collected by toy aficionados. Even if we assume purely for the sake of argument that toy aficionados could distinguish between MEGO toys and LEGO toys, these toy aficionados are but a tiny fraction of the consumers of toys, namely, children and their parents,

9

grandparents and friends.

Having found that there exists a likelihood of confusion, we elect to sustain the opposition on this basis alone. We will not consider opposers' claim, which was unpled but which was tried by the consent of the parties, that the current applicants are bound by a 1985 settlement agreement entered into by opposers and Mego Corp., the former owner of the old MEGO mark. See American Paging Inc. v. American Mobilephone Inc., 13 USPQ2d 2036, 2039 (TTAB 1989), aff'd 17 USPQ2d 1726 (Fed. Cir. 1990) and cases cited therein.

Decision: The opposition is sustained.

MAR 0 8 2002