This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

Baxley

Mailed: September 21, 2011

Opposition No. **91189540**

Great Seats, Inc.

v.

Great Seats, Ltd.

**Andrew P. Baxley, Interlocutory Attorney:**

In this proceeding, Great Seats, Inc. ("opposer") opposes registration of Great Seats, Ltd.'s ("applicant") mark GREAT SEATS in typed form for "arranging for ticket reservations for shows and other entertainment events" in International Class 41.[1] Opposer has pleaded claims of likelihood of confusion with its previously used mark GREAT SEATS for "ticket agency services for concerts, theatrical performances and sporting events" under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), and that the involved mark has not acquired distinctiveness under

---

[1] Application Serial No. 75733290, filed June 21, 1999, based on use in commerce under Trademark Act Section 1(a), 15 U.S.C. Section 1051(a), and asserting August 1, 1992 as the date of first use anywhere and date of first use in commerce. The application includes a claim of distinctiveness under Trademark Act Section 2(f), 15 U.S.C. Section 1052(f), and a disclaimer of SEATS. Because applicant seeks registration under Section 2(f), the involved mark's lack of inherent distinctiveness is an established fact. See *Yamaha International Corp. v. Hoshino Gakki Co. Ltd.,* 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988).

Trademark Act Section 2(f), 15 U.S.C. Section 1052(f).[2]  The

parties filed cross-motions for summary judgment on the

pleaded Section 2(d) claim, which the Board denied in a May

12, 2010 order.  Under the schedule set forth in that order,

the discovery period closed on June 24, 2010, opposer's

pretrial disclosures were due by August 8, 2010,[3] and

opposer's testimony period commenced on August 24, 2010.

However, applicant's new attorney entered an appearance on

July 23, 2010.  Then, beginning on September 1, 2010, i.e.,

after the trial period opened, the parties sought and

received three extensions of trial dates to accommodate

their settlement discussions, the last of which reset the

deadline for opposer's pretrial disclosures to February 4,

2011.[4]

---

[2] The parties were involved in Cancellation No. 92032524, styled
*Great Seats, Ltd. v. Great Seats, Inc.*, 84 USPQ2d 1235 (TTAB
2007).  In that proceeding, opposer's Registration No. 2339519
for the mark GREAT SEATS INC. and design for "ticket agency
services for concerts, theatrical performances, and sporting
events" in International Class 41 was cancelled on the ground the
application for such registration was void *ab initio* because it
was not filed by the owner of the mark.  Applicant's involved
application had been suspended pending final determination of the
earlier cancellation proceeding and was published for opposition
on December 9, 2008.  The above-captioned opposition proceeding
followed.

[3] August 8, 2010 was a Sunday.  Accordingly, any pretrial
disclosures that opposer served on Monday, August 9, 2010 would
have been treated as timely.  See Trademark Rule 2.196.

[4] Although opposer's testimony period had begun, opposer's
consented motions to extend, which were filed electronically
through ESTTA, sought to reset dates commencing with the due date
for pretrial disclosures.

This case now comes up for consideration of applicant's motion (filed February 23, 2011) (1) to quash opposer's notice of testimony depositions and (2) to exclude the testimony of Michael Kelly, who was first named in applicant's original pretrial disclosures on August 9, 2010, and twenty-six additional nonparty individuals that were disclosed for the first time in amended and supplemental pretrial disclosures that opposer served on February 4 and 9, 2011, respectively.  The motion has been fully briefed.

In support of its motion, applicant contends that, in initial disclosures that opposer served on August 12, 2009, opposer named its president, Enrique Daniel Matta, as the only person with discoverable information that opposer may use in this proceeding; and that opposer did not subsequently amend its initial disclosures.  In applicant's interrogatory no. 1 (served on June 23, 2010), applicant asked opposer to "[i]dentify each person having firsthand knowledge of Matta being known as 'GREAT SEATS' at any time during the period from January 1, 1978 to January 1, 1993, and for each person identified, describe his/her relationship to Matta, both currently and over said time period."  In response, opposer objected to said interrogatory as unduly burdensome and identified two "long-time acquaintance[s]," Tim Lee and Donald Phillips, with no

indication that it would subsequently name additional persons.

In the original pretrial disclosures that opposer timely served on Monday, August 9, 2010, opposer named Messrs. Lee and Phillips and, for the first time, Michael Kelly as potential witnesses regarding their "first hand knowledge of the appellation GREAT SEATS in connection with the sale of tickets to entertainment and sports events by Mr. Matta and the level of recognition on the part of the public of Mr. Matta as GREAT SEATS." On February 4, 2011, opposer served amended pretrial disclosures in which, for the first time, it named eighteen additional potential witnesses who may testify regarding the same subject matter. Then, on February 9, 2011, opposer served supplemental pretrial disclosures in which it identified another eight witnesses who may testify regarding that subject matter. Opposer then, on February 16, 2011, served a notice of testimony depositions in which it identified twenty-nine witnesses -- Messrs. Lee and Phillips, who had been identified in response to applicant's interrogatory no. 1 and who were disclosed in the August 9, 2010 pretrial disclosures, Mr. Kelly, who was first disclosed in the August 9, 2010 pretrial disclosures, and the twenty-six witnesses who were first disclosed in the February 2011 amended and supplemental pretrial disclosures -- whom it

intended to depose on March 16 and 17, 2011.  Opposer refused to withdraw that notice during a telephone conference between the parties' attorneys.  In view of opposer's failure to identify Mr. Kelly or any of the twenty-six witnesses named in the February 2011 amended and supplemental pretrial disclosures in either its initial disclosures or in response to interrogatories, applicant contends that it was deprived of the opportunity to seek discovery from those witnesses and that it will be prejudiced if opposer is allowed to rely on the their testimony.  Moreover, applicant contends that the February 9, 2011 supplemental pretrial disclosures are untimely and that testimony of the eight witnesses identified therein should be excluded on that basis.

In response, opposer contends that, because it provided statements from Messrs. Lee and Phillips in its January 19, 2010 combined brief in response to applicant's cross-motion for summary judgment and reply brief in support of its motion for summary judgment, applicant had been aware for more than a year that opposer intended to rely on nonparty witnesses who would testify as to their knowledge of the appellation GREAT SEATS in connection with the sale of tickets to entertainment and sports events by Mr. Matta and the level of recognition on the part of the public of Mr. Matta as GREAT SEATS, and that any failure to disclose those

5

witnesses earlier was harmless.  Opposer further contends that, because it was concentrating on its efforts to settle this case in the time between applicant's July 23, 2010 change of attorneys and January 2011, any failure to disclose those witnesses earlier was substantially justified.  Opposer contends in addition that, while applicant's attorney asked during an August 18, 2010 telephone conference to take discovery depositions of any new nonparty witnesses upon whom opposer may intend to rely at trial, opposer declined to consent to such discovery depositions because (1) opposer has no control over those nonparty witnesses; (2) applicant would be able to cross-examine them during their testimony depositions; and (3) taking discovery depositions of those witnesses would not be conducive to settling this case.  Opposer further contends that it was not able to locate the additional nonparty witnesses until the end of 2010 and January 2011, that their testimony is crucial to its assertion of prior rights in the GREAT SEATS mark and that applicant will not be prejudiced because (1) applicant knew of the subject matter about which Mr. Kelly and the other twenty-six potential new witnesses would testify long before opposer made the amended and supplemental pretrial disclosures in February 2011; and (2) applicant would have roughly a month between the Feburary 16, 2011 date of the notice of depositions and the March 16-

6

17, 2011 dates on which those depositions were scheduled to be taken to prepare for the depositions at issue. Accordingly, opposer asks that the Board deny applicant's motion.

In reply, applicant contends that, even if it knew that opposer intended to rely upon nonparties as witnesses in support of its assertion of priority, which is a central and disputed issue in this case, applicant did not know the identity of Mr. Kelly or any of the other twenty-six additional potential witnesses until after the close of discovery, and that opposer's initial pretrial disclosures identified only one of those twenty-seven additional potential witnesses, i.e., Mr. Kelly. Accordingly, applicant contends that opposer's failure to disclose those witnesses earlier is inexcusable and a blatant attempt to circumvent taking of discovery.

Board *inter partes* proceedings are governed, in part, by the Federal Rules of Civil Procedure, except as otherwise provided in the Trademark Rules of Practice, and "wherever [the Federal Rules are] applicable and appropriate." Trademark Rule 2.116. In turn, Fed. R. Civ. P. 26(a)(1)(A)(i) requires parties to provide an initial disclosure identifying "each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support

7

its claims or defenses, unless the use would be solely for impeachment." Initial disclosures do not require an exhaustive search for all information or potential witnesses that could be used at trial.[5] See *Byer California v. Clothing for Modern Times Ltd.*, 95 USPQ2d 1175, 1178 (TTAB 2010). Accordingly, the Board declines to quash the notice of testimony deposition of Mr. Kelly or the twenty-six other new potential witnesses named in opposer's pretrial disclosures and exclude their testimony based on opposer's failure to name them in initial disclosures.

In addition, the supplemental pretrial disclosures naming for the first time eight additional potential witnesses, which opposer served on February 9, 2011, i.e., five days after the last deadline for opposer's pretrial disclosures, were in compliance with opposer's ongoing duty to supplement its pretrial disclosures. See Fed. R. Civ. P. 26(e)(1)(A). Accordingly, the Board declines to quash the notice of testimony deposition with regard to those eight additional potential witnesses and to exclude their testimony based on the alleged untimeliness of the supplemental pretrial disclosures.

---

[5] However, it would be curious for a trial witness not to have discoverable information. See *Byer California v. Clothing for Modern Times Ltd.,* 95 USPQ2d at 1178. Therefore, if the identity of the witness is known when initial disclosures are made, and the relevant knowledge of the witness is known, then a party may have to disclose the identity of the witness when making initial

Nonetheless, opposer was under a duty to supplement or correct its discovery responses "in a timely manner if [opposer] learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* Under the estoppel sanction, a party that fails to provide information may, upon motion or objection by its adversary, be precluded from using that information or witness at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[6] See also TBMP Section 527.01(e) (3d ed. 2011).

In determining whether opposer's failure to disclose Mr. Kelly or the other twenty-six new potential witnesses in a supplemental response to interrogatory no. 1 is substantially justified or harmless, the Board is guided by the following five-factor test: "1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure the surprise; 3) the extent to which allowing the testimony would disrupt the trial; 4) importance of the evidence; and 5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams*

---

disclosures, even if the party has no plans at that time to rely on testimony from the witness.

[6] This provision of Rule 37 references Rule 26(e) which requires supplementation of discovery responses.

*Co*., 318 F.3d 592, 597 (4th Cir. 2003). See also *MicroStrategy, Inc. v. Business Objects, S.A*., 429 F.3d 1344, 1357, 77 USPQ2d 1001, 1009-10 (Fed. Cir. 2005) (applying *Southern States* factors in excluding non-expert damages evidence as a sanction for late disclosure). The Board will address each of these factors.

Regarding surprise to applicant, opposer, in response to applicant's interrogatory no. 1, identified only Messrs. Lee and Phillips as "person[s] having firsthand knowledge of Matta being known as 'GREAT SEATS' at any time during the period from January 1, 1978 to January 1, 1993." Prior to the August 9, 2010 service of opposer's first pretrial disclosures, in which opposer disclosed Mr. Kelly as a potential witness, applicant had no reason to believe that opposer's response to interrogatory no. 1 was anything other than a complete and good faith response to that interrogatory. Cf. *Panda Travel Inc. v. Resort Option Enterprises Inc.*, 94 USPQ2d 1789, 1792 (TTAB 2009) (motion to strike documents granted where documents were sought during discovery, but not produced until trial). Opposer then, in its amended and supplemental pretrial disclosures that were served more than seven months after the close of discovery, identified twenty-six new potential witnesses. Failure to name during discovery Mr. Kelly and any of the

twenty-six additional witnesses first named in the amended and supplemental pretrial disclosures as persons having firsthand knowledge of Mr. Matta being known as "GREAT SEATS" resulted in unfair surprise to applicant and deprived applicant of any opportunity to take discovery from any of them. See "Miscellaneous Changes to Trademark Trial and Appeal Board Rules," 72 Fed. Reg. 42242, 42255 (August 1, 2007) (explaining that one reason for the Board's adoption of a pretrial disclosure requirement was to address assertions of unfair surprise at trial). With regard to Mr. Kelly, this unfair surprise was compounded by opposer's refusal to consent to applicant's request to take a discovery deposition of him.[7] In view of the disclosure of Mr. Kelly for the first time after the close of discovery, opposer's refusal to allow applicant an opportunity to take a discovery deposition of Mr. Kelly prior to trial was unreasonable. See *Byer California v. Clothing for Modern Times Ltd.,* 95 USPQ2d at 1178-79; TBMP Section 414(7) (3d ed. 2011). Accordingly, this factor strongly favors applicant.

Regarding the ability of applicant to cure the surprise, the Board notes that applicant could not cure the

---

[7] Applicant did not ask to take discovery depositions of the twenty-six new potential witnesses that were first disclosed in opposer's amended and supplemental pretrial disclosures. Rather, applicant asked that opposer withdraw those potential new witnesses from its amended and supplemental pretrial disclosures.

surprise without filing the motion to quash decided in this order, or by seeking to reopen discovery to take discovery depositions of Mr. Kelly and the twenty-six other new potential witnesses, or by engaging in previously unplanned preparation to cross-examine those potential witnesses. This factor also favors applicant.

Regarding the extent to which allowing the testimony of the additional potential witnesses would disrupt this trial, opposer's failure to disclose these witnesses earlier through supplementation of its interrogatory response has indeed been disruptive to the orderly administration of this trial. Such late disclosure caused applicant to file its motion in response thereto and caused the Board to suspend this case pending a decision thereon. This factor also favors applicant.

Regarding the importance of the evidence at issue, the testimony of the additional witnesses may be important. Opposer, as plaintiff, has the burden of proof in this proceeding, and must establish its prior rights in the GREAT SEATS mark to prevail on its Section 2(d) claim in this case. See *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). This factor therefore may favor opposer. The Board notes, however, that opposer has two witnesses –- Messrs. Lee and Phillips -- who

12

were named in response to interrogatory no. 1, upon whom opposer may rely in support of this opposition.

Regarding opposer's explanation for its failure to supplement, opposer's attorney, in a February 16, 2011 letter to applicant's attorney that applicant included as an exhibit to its motion, stated that it was only around the time that settlement negotiations broke down in early 2011 that "Mr. Matta devised a method to track down the additional witnesses." At a minimum, opposer should have been cognizant of what evidence it would need to establish its claims and how it would obtain that evidence long before settlement discussions were terminated, for trial had previously opened and opposer should have had a trial plan in place at that time. Opposer's explanation gives the impression that opposer only fully considered how it would establish its claims after settlement discussions ended.[8] To allow all of the new potential witnesses to testify under these circumstances would overlook and essentially excuse opposer's failure to supplement discovery and reward its correspondingly late disclosure of these witnesses. Therefore, this factor strongly favors applicant.

On balance, the Board finds that opposer's failure to name Mr. Kelly until service of its original pretrial

---

[8] The Board is careful to distinguish the present situation from one in which the potential witnesses could not have been discovered earlier through reasonable diligence.

disclosures more than a month after the close of discovery and failure to name the twenty-six additional potential witnesses until service of opposer's amended and supplemental pretrial disclosures more than seven months after the close of discovery was neither harmless nor substantially justified.  In view thereof, the Board finds that it is appropriate to apply the estoppel sanction. Applicant's motion to quash and to exclude testimony is granted to the extent that opposer may not take testimony of the twenty-six potential witnesses that were first disclosed in opposer's February 2011 amended and supplemental pretrial disclosures.  However, opposer may rely on the testimony of Michael Kelly, who was first disclosed in opposer's initial pretrial disclosures on August 9, 2010, provided that applicant has an opportunity to take Mr. Kelly's discovery deposition prior to his appearance for a testimony deposition.  Applicant is allowed until thirty days from the mailing date set forth in this order to take such discovery deposition.[9]

Proceedings herein are resumed.  Remaining dates are reset as follows.

| | |
|---|---|
| Plaintiff's 30-day Trial Period Ends | **12/5/11** |
| Defendant's Pretrial Disclosures Due | **12/20/11** |

---

[9] Because Mr. Kelly is a nonparty witness, any such discovery deposition must be taken pursuant to a subpoena issued by the United States district court in the federal judicial district where Mr. Kelly resides or is regularly employed.  See TBMP Section 404.03(a)(2) (3d ed. 2011).

14

| | |
|---|---|
| Defendant's 30-day Trial Period Ends | **2/3/12** |
| Plaintiff's Rebuttal Disclosures Due | **2/18/12** |
| Plaintiff's 15-day Rebuttal Period Ends | **3/19/12** |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).  An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.

If either of the parties or their attorneys should have a change of address, the Board should be so informed promptly.