THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

WINTER

February 28, 2020

Opposition No. 91243095

*Lacteos de Honduras S.A.*

*v.*

*Industrias Sula, S. De R.L. de C.V.*

Before Kuhlke, Pologeorgis, and Hudis,
Administrative Trademark Judges.

By the Board:

## I.     Background

Applicant, Industrias Sula, S. De R.L. de C.V., seeks registration of the mark RICA SULA in standard characters for use in connection with "snacks, namely, plantain chips, tortilla chips, potato chips" in International Class 29 and "cheese curls; cheese balls" in International Class 30.[1] Opposer, Lacteos de Honduras S.A., opposes registration of the applied-for mark on the ground of priority and likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), pleading

---

[1] Application Serial No. 87596475, filed September 5, 2017 under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and first use in commerce since at least as early as January 1, 2011 with respect to all identified goods. The English translation of the term "RICA" is "RICH."

ownership of two U.S. trademark registrations for the mark SULA in typed format[2] and SULA (and design)[3] shown below, both registered in connection with "spreads, namely, vegetable oil and dairy cream based blends":[4]



In addition to denying the salient allegations set forth in the notice of opposition, Applicant filed counterclaims to cancel both of Opposer's pleaded U.S. registrations under Article 8 of the General Inter-American Convention for Trademark and

---

[2] U.S. Reg. No. 2686401, issued February 11, 2003, alleging August 4, 1994 as its date of first use in commerce and anywhere; Sections 8 & 15 declarations accepted and acknowledged; and Section 9 renewal granted.

[3] U.S. Reg. No. 3810711, issued June 29, 2010, alleging 1957 as its date of first use anywhere and 1992 as its date of first use in commerce. The mark is described as a "design of an award ribbon with the word 'SULA' in the center of the ribbon." Color is not claimed as a feature of the mark. Sections 8 & 15 declarations accepted and acknowledged.

[4] Opposer also pleads ownership of four pending intent-to-use applications: Application Serial No. 87977273, filed May 12, 2016, for the mark SULA in standard characters, for use in connection with "milk beverages, namely, milk; cheese;" "chocolate-based beverages with milk, and vanilla-based beverages with milk;" and "strawberry-based beverages with milk";

Application Serial No. 87034389, filed May 12, 2016, for the mark SULA in standard characters, for use in connection with "non-alcoholic fruit nectars, namely, peach nectar, pear nectar, mango nectar, guava nectar, pineapple nectar, and apple nectar; non-alcoholic fruit juices, namely, orange juice, orange-carrot juice, mandarin orange juice, apple juice, pineapple juice, guava juice, and tamarind juice"; Application Serial No. 87977335 for SULA (and design), **Sula** filed May 26, 2016, for use in connection with "milk beverages, namely, milk; cheese;" "chocolate-based beverages with milk, and vanilla-based beverages with milk;" and "strawberry-based beverages with milk"; and Application Serial No. 87050984, for SULA (and design), **Sula** filed May 26, 2016, for use in connection with "non-alcoholic fruit nectars, namely, peach nectar, pear nectar, mango nectar, guava nectar, pineapple nectar, and apple nectar; non-alcoholic fruit juices, namely, orange juice, orange-carrot juice, mandarin orange juice, apple juice, pineapple juice, guava juice, and tamarind juice."

Commercial Protection of Washington, 1929 ("Pan-American Convention" or "Convention"). Applicant also asserted an affirmative defense, claiming that it has priority under Articles 7 and 8 of the Convention.

This case now comes up for consideration of Opposer's combined motion (filed May 24, 2019, 11 TTABVUE) to dismiss Applicant's counterclaims and to strike its affirmative defense. The motion is fully briefed.

We have considered the parties' briefs, but address the arguments and record only to the extent necessary to set forth our analysis and findings, and do not repeat or address all of the parties' arguments. *Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

## II. Opposer's Motion to Dismiss Applicant's Counterclaims

### A. Legal Standard

To withstand a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff (or counterclaim-plaintiff) need only allege sufficient factual content that, if proved, would allow the Board to conclude, or to draw a reasonable inference, that (1) the plaintiff has standing to maintain the proceeding, and (2) a valid ground exists for opposing an application or cancelling a registration. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1027 (Fed. Cir. 1999); *Doyle v. Al Johnson's Swedish Rest. & Butik Inc.*, 101 USPQ2d 1780 (TTAB 2012) (citing *Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998)); *Order of Sons of Italy in Am. v. Profumi Fratelli Nostra AG*, 36 USPQ2d 1221, 1222 (TTAB 1995); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 503.02

3

(2019). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claimant must allege well-pleaded factual matter and more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a complaint, all well-pleaded material allegations in the complaint are accepted as true and construed in favor of the complaining party. *See, e.g.*, *Ritchie*, 50 USPQ2d at 1027; *Doyle*, 101 USPQ2d at 1782. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must challenge the legal theory of the complaint, and not rely on anticipated insufficiency of the evidence or assertions that extrinsic evidence would prevent the plaintiff from proving its claims. *See, e.g.*, *Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys. Inc.*, 988 F.2d 1157, 26 USPQ2d 1038, 1041 (Fed. Cir. 1993); *Libertyville Saddle Shop Inc. v. E. Jeffries & Sons Ltd.*, 22 USPQ2d 1594 (TTAB 1992); *see also* TBMP §§ 503.01 and 503.02.

### B. Analysis

#### 1. Whether claims under Article 8 of the Pan-American Convention may be brought as a counterclaim.

Applicant's counterclaims are grounded in Article 8 of the Pan-American Convention, and a preliminary issue is whether Article 8 of the Pan-American Convention authorizes an applicant whose mark was approved for publication and subsequently opposed to bring a counterclaim seeking cancellation of an opposer's cited registration(s). Article 8 provides as follows:

When the owner of a mark seeks the registration or deposit of the mark in a Contracting State other than that of origin of the mark and such **registration or deposit is refused** because of the previous registration or deposit of an interfering mark, he shall have the right to apply for and obtain the cancellation or annulment of the interfering mark upon proving, in accordance with the legal procedure of the country in which cancellation is sought, the stipulations in Paragraph (a) and those of either Paragraph (b) or (c) below:

(a) That he enjoyed legal protection for his mark in another of the Contracting States prior to the date of the application for the registration or deposit which he seeks to cancel; and

(b) That the claimant of the interfering mark, the cancellation of which is sought, had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods to which said interfering mark is applied, prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be cancelled; or

(c) That the owner of the mark who seeks cancellation based on a prior right to the ownership and use of such mark, has traded or trades with or in the country in which cancellation is sought; and that goods designated by his mark have circulated and circulate in said country from a date prior to the filing of the application for registration or deposit for the mark, the cancellation of which is claimed, or prior to the adoption and use of the same.

Pan-American Convention, 46 Stat. 2907 (emphasis added). The issue is thus whether the highlighted language covers the situation presented here, since registration of Applicant's mark was not "refused."

We construe Article 8 of the Convention in accordance with the ordinary meaning of its terms. *See Mario Diaz v. Servicios de Franquicia Pardos S.A.C.*, 83 USPQ2d 1320, 1325 (TTAB 2007) ("in construing a treaty, the terms thereof are given their ordinary meaning in the context of the treaty and are interpreted, in accordance with that meaning, in the way that best fulfills the purposes of the treaty) (internal citations omitted). Assuming the plaintiff meets the initial requirements of Article 8,

discussed below, an action to cancel a trademark registration may be brought under that article by making the allegations set forth in subsection 8(a) and either 8(b) or 8(c) of the Article. *British-American Tobacco Co. v. Philip Morris Inc.*, 55 USPQ2d 1585, 1588 (TTAB 2000) (citing to the Pan-American Convention of 1929, 46 Stat. 2907).

In *British-American Tobacco*, 55 USPQ2d at 1590-91, the Board considered whether a plaintiff properly set forth a claim upon which relief can be granted under Article 8 of the Pan-American Convention.[5] In that case, British-American Tobacco Co. Ltd. and its wholly-owned subsidiary, Tabacalera Istmena, S.A., sought to cancel Philip Morris Inc.'s registration of the mark BELMONT for cigarettes under Article 8, subsections 8(a) and 8(b), of the Convention. Petitioners alleged essentially that: (1) petitioner Tabacalera applied to register the mark BELMONT in Panama for cigarettes prior to the filing by Philip Morris of its intent-to-use application in the United States for the mark BELMONT for cigarettes; (2) Philip Morris had knowledge of Tabacalera's prior use in Panama of the mark BELMONT for cigarettes; and (3) Tabacalera's applications were refused registration based on the Philip Morris registrations. *Id.* at 1587. The Board construed petitioners' allegations regarding Tabacalera's use of the mark BELMONT in Panama and its subsequent filing of a trademark application in Panama as an allegation that it possessed "legal protection"

---

[5] The Board initially concluded that because it is authorized under the Trademark Act to determine the registrability of trademarks in ex parte and inter partes proceedings, including the authority to order the cancellation of registrations, a plaintiff's claim under Article 8 of the Pan-American Convention is within the Board's jurisdiction, *id.* at 1589, and that the Convention is self-executing. *Id.* at 1590.

of the BELMONT mark in Panama, as required under Article 8, subsection 8(a). *Id.* at 1590. The Board then concluded that petitioners' pleading was sufficient to state a claim under Article 8 of the Convention. *Id.*

While the Board in *British-American Tobacco* was concerned with whether petitioners sufficiently alleged that they "enjoyed legal protection" under subsection 8(a) of Article 8, the case before us raises different issues; specifically, whether Applicant's counterclaim is available under the requirement set forth in the Preamble of Article 8 and whether its pleading otherwise sets forth allegations sufficient to meet the requirements of subsections (a) and (b) of that Article.[6]

The Preamble of Article 8 of the Convention states, in relevant part, as follows:

> When the owner of a mark seeks the registration … of the mark in a Contracting State other than that of origin of the mark and such registration … is refused because of the previous registration … of an interfering mark, [the owner of the mark] shall have the right to apply for and obtain a cancellation of the interfering mark upon proving, in accordance with the legal procedure of the country in which cancellation is sought, the stipulations in Paragraph (a) and those of either Paragraph (b) or (c).

Construing the Preamble in accordance with the ordinary meaning of its terms, *see Diaz*, 83 USPQ2d at 1325, we note that the provision requiring that registration of the mark owned by the potential counterclaimant "is refused" is not limited by the word "examination." Therefore, we hold that the requirement in the Article 8 Preamble, i.e., for a refusal of registration in order to invoke the right to apply for

---

[6] We find that Applicant's allegations do not fall under subsection 8(c), insofar as the counterclaim does not allege that the "goods designated by [plaintiff's] mark have circulated and circulate in said country [in which cancellation is sought] from a date prior to the filing of the application for registration …, the cancellation of which is claimed, or prior to the adoption and use of the same."

and obtain a cancellation of the interfering mark, includes not only a refusal resulting from ex parte examination by the United States Patent and Trademark Office, but also **the potential for refusal** resulting from the institution of an opposition proceeding before the Board, which determines registrability of a trademark. *See* Trademark Act Section 17, 15 U.S.C. § 1067 ("the Director … shall direct a Trademark Trial and Appeal Board to determine and decide the respective rights of registration"); *see also Diaz*, 83 USPQ2d at 1323 ("since [the Board] was authorized under the Lanham Act to determine the registrability of marks in the context of ex parte appeals and inter partes proceedings, it [has] the requisite jurisdiction to consider a claim brought before it under Article 8 because that article expressly related to the registrability of marks") (citing *British-American Tobacco*, 55 USPQ2d at 1589). To construe otherwise would deprive a potential counterclaimant its right to file a compulsory counterclaim, *see Jive Software, Inc. v. Jive Comm., Inc.*, 125 USPQ2d 1175, 1177 (TTAB 2017)[7] and Trademark Rule 2.106(b)(3)(i). *British-American Tobacco*, 55 USPQ2d at 1589 (citing *Bacardi Corp. of America v. Domenech*, 311 U.S. 150, 161, 47 USPQ 350, 355 (1940)) ("[the court] should construe the treaty liberally to give effect to the purpose which animates it. Even where a provision of a treaty fairly admits of two constructions, one restricting, the other enlarging rights which may be claimed under it, the more liberal interpretation is to be preferred.").

---

[7] The rules require compulsory counterclaims to be pleaded in the answer, if known, but under Fed. R. Civ. P. 15(a), where justice requires, answers may be amended to add an omitted compulsory counterclaim, subject to the same rules applicable to other amendments to pleadings. *Jive Software*, 125 USPQ2d at 1180.

## 2. Whether applicant states a claim under Article 8 of the Pan-American Convention for which relief can be granted.

Turning to Article 8, subsection 8(a), that provision requires that the trademark owner (here, plaintiff in the counterclaim) enjoyed legal protection for its mark in another of the Contracting States prior to the date of the application for the registration which it seeks to cancel. Subsection 8(b) requires that the claimant of the interfering mark, that is, the defendant owner of the registration sought to be cancelled, had knowledge of the use in any of the Contracting States of the plaintiff's mark for the specific goods to which the interfering mark is applied, prior to its adoption and use or prior to the filing of the application of the mark which is sought to be cancelled.

Therefore, based on all the requirements set forth above, to state a claim upon which relief can be granted under subsections (a) and (b) of Article 8 of the Convention, the plaintiff (or counterclaim-plaintiff) must allege the following:

i.    Counterclaim-plaintiff seeks registration in the United States of a mark which originated in another Contracting State;

ii.   During ex parte examination by the United States Patent and Trademark Office, registration to the counterclaim-plaintiff has been refused because of the previous registration of an interfering mark, or an opposition has been instituted by the Trademark Trial and Appeal Board for the owner of the interfering mark;

iii.  Counterclaim-plaintiff enjoyed legal protection for its mark in another Contracting State to the Pan-American Convention and that legal

protection existed prior to the date of the application for the registration it seeks to cancel;

iv. The owner of the registration of the interfering mark (counterclaim-defendant) had knowledge of the use, employment, registration or deposit of counterclaim-plaintiff's mark in any of the Contracting States for the specific goods to which the counterclaim-defendant's interfering mark is applied; and,

v. The goods or services of the parties must be identical and the counterclaim-defendant knew of the counterclaim-plaintiff's mark prior to adoption and use of the interfering mark, or prior to the filing of the application for or deposit of the mark which is sought to be cancelled.

With the foregoing in mind, we examine Applicant's allegations, and consider first whether they satisfy the requirements of Article 8 of the Convention. The allegations are summarized, in relevant part, below:

1. Applicant is a company from Honduras and is the owner of the RICA SULA mark, which was previously registered in 1974 and 1982 in Honduras.

2. Applicant seeks registration of the mark RICA SULA in the U.S. by way of application Serial No. 87596475, filed with the USPTO on September 5, 2017, by Applicant's predecessors-in-interest.

3-6. Opposer is another Honduran entity, which claims ownership of the mark SULA, and has registered that mark for various goods in International Class 29 (U.S. Reg. Nos. 2686401 and 3810711).

7. Opposer claims to have used its SULA marks in U.S. commerce since at least 1992, and in Honduras since at least 1957.

8-9. Opposer applied for registration of its trademark registrations (U.S. Reg. Nos. 2686401 and 3810711) on May 15, 2002 and on November 12, 2009, respectively.

11-12. There is a likelihood of confusion between Applicant's RICA SULA mark and Opposer's SULA mark.

12-14. Applicant has standing because there is likelihood of confusion between the parties' marks and it has been damaged by Opposer's registrations. Applicant also has standing by virtue of Opposer's effort to oppose Applicant's application, which if successful, will damage the commercial interests of Applicant and interfere with the trademark protections it seeks.

15. Applicant's request for cancellation is predicated upon Article VIII of the 1929 Inter-American Convention ("the Convention").

18. Applicant "has enjoyed legal protection for its RICA SULA mark in the nation of Honduras since at least 1974, when it first registered the mark in that signatory nation." 9 TTABVUE 9.

To begin, Applicant alleges that Opposer has opposed its application for registration (¶ 14, 9 TTABVUE 8). Therefore, Applicant's allegation meets the refusal requirement set forth in the Article 8 Preamble of the Convention. With respect to the requirements of subsections (a) and (b) of Article 8, Applicant alleges that it "has enjoyed legal protection for its RICA SULA mark in the nation of Honduras since at least 1974, when it first registered the mark in that signatory nation." ¶ 18, 9 TTABVUE 9. We construe Applicant's allegation in paragraph 18, together with the allegations in paragraphs 8 and 9 (which refer to the filing dates of Opposer's underlying applications, 9 TTABVUE 7), as meaning that the legal protection it enjoyed preceded the filing dates of Opposer's underlying applications to its pleaded registrations.

Opposer argues that the counterclaim is insufficient because Applicant's involved registrations allegedly have long since expired. Opposer relies on the copies of Applicant's registration certificates attached to the counterclaim, which appear to show that registrations for RICA SULA (stylized & design) and RICASULA issued to Applicant on "3 Febrero de 1983" and "10 Junio de 1986," respectively. 9 TTABVUE 14-20. Opposer contends that there is no indication that these registrations have been renewed.

We could have considered the exhibits attached to Applicant's counterclaim for the sole purpose of ascertaining the plausibility of its allegations. *See Caymus Vineyards v. Caymus Medical, Inc.*, 107 USPQ2d 1519, 1522 (TTAB 2013) (in which the Board considered the exhibits attached to applicant's first amended answer and counterclaim for the purpose of ascertaining the plausibility of applicant's allegations) (citing Fed. R. Civ. P. 10(c), Trademark Rule 2.116(a); *cf. In re Bill of Lading Transmission & Processing Sys. Patent Litigation*, 681 F.3d 1323, 103 USPQ2d 1045, 1055 (Fed. Cir. 2012) ("district court was required to analyze the facts plead in the amended complaints and all documents attached thereto with reference to the elements of a cause of action")). However, because the exhibits are in Spanish and Applicant has not provided an English translation of the documents, they have not been considered. *See Johnson & Johnson v. Obschestvo s ogranitchennoy; otvetstvennostiu "WDS"*, 95 USPQ2d 1567, 1570 n.3 (TTAB 2010) (noting that if a party intends to rely at trial on business records in a foreign language, it must provide a translation); TBMP § 104.

Opposer's contention regarding Applicant's ability to prove its allegations concerning the current status of Applicant's rights is premature. Applicant's allegation is sufficient because all that is required by the Convention is that the plaintiff "enjoyed[8] legal protection for [its] mark in another of the Contracting States prior to the date of the application for the registration or deposit which [it] seeks to cancel."

Whether Applicant enjoyed legal protection for its marks in another Contracting State prior to the filing date of the underlying application for the registration which it seeks to cancel, or whether Honduras only provides trademark protection for marks that are registered, as argued by Opposer, are issues for summary judgment or trial, not the pleading stage of the proceeding. *See British-American Tobacco*, 55 USPQ2d at 1590-91 (finding that the record did not include sufficient factual information to allow the Board to draw any conclusions about the nature of the law in Panama, therefore, it remained "to be established whether petitioner's use and/or application filing in Panama constitute legal protection under Article 8(a) of the Convention"); *see also Libertyville Saddle Shop Inc.*, 22 USPQ2d at 1597 (a motion to dismiss is a test solely of the legal sufficiency of the plaintiff's pleadings and does not involve a determination of the merits of the case). Therefore, we find that Applicant sufficiently alleged that it "enjoyed" legal protection of its mark in Honduras, as required by subsection 8(a) of the Convention.

---

[8] Notably, the Convention uses the past tense, "enjoyed legal protection" and does not say "enjoy and continues to enjoy" legal protection.

Turning to Applicant's other relevant allegations, we consider whether they are sufficient to satisfy the requirements of subsection (b) of Article 8:

19.    Upon information and belief, Opposer has long had knowledge of the use or employment of the RICA SULA mark by Applicant's (counterclaim-plaintiff's) predecessors-in-interest, within the meaning of Art. VIII of the Convention.

20.    Upon information and belief, Opposer was aware of the existence and continued use of the mark RICA SULA for snack-based goods in Honduras prior to the filing dates of the applications underlying Opposer's registrations.

21.    Upon information and belief, Opposer was aware of the existence and continued use of the mark RICA SULA for plantain chips, tortilla chips, potato chips, cheese curls, and/or cheese balls in Honduras prior to the filing dates of the applications underlying Opposer' registrations.

22.    Upon information and belief, Opposer was aware of Applicant and its use of the RICA SULA mark for years, prior to its filing of the applications underlying its involved registrations on May 15, 2002 and November 12, 2009, respectively.

23-27. Opposer and Applicant conduct business in the same city in Honduras, San Pedro Sula, Cortes; both parties are headquartered there and are located within 15 kilometers of each other.

28-29. Because Opposer had knowledge of Applicant's use of the RICA SULA mark for its goods prior to the dates on which it applied for registration of its SULA marks, and because Applicant enjoyed "legal protection" in the RICA SULA mark, Opposer's registrations should be cancelled under Art. VIII of the Convention.

Applicant's allegations satisfy one of the requirements set forth in Article 8, subsection 8(b), namely, that Opposer knew of Applicant's use of the RICA SULA marks prior to the filing dates of its own underlying applications. See ¶¶ 19-22, 9 TTABVUE 9-10. However, as explained earlier, Article 8(b) also requires that the owner of the registration of the interfering mark (Opposer, the counterclaim-defendant) had knowledge of the use, employment, registration or deposit of

14

Applicant's (the counterclaim-plaintiff's) mark in any of the Contracting States for the specific goods to which the counterclaim-defendant's interfering mark is applied. We interpret "specific goods" in this context to mean **the same goods**.

Here, the goods to which the registrations of Opposer (the counterclaim-defendant) are applied are "spreads, namely, vegetable oil and dairy cream based blends." Applicant's counterclaim does not allege either that it has rights in its mark for those particular goods in Honduras (or anywhere else) or that Opposer was aware of such rights as to those particular goods. Therefore, with respect to this requirement of subsection 8(b), because Applicant has not alleged in its counterclaim (nor argued in its responsive brief) that it provides the same goods under its RICA SULA marks as Opposer provides under its marks, we find that Applicant has failed to allege in its counterclaim that Opposer had prior knowledge of Applicant's use in Honduras for the same goods for which Opposer applied to register its "interfering" mark.

In view of the foregoing, Applicant's allegations fail to state a claim under Article 8 of the Pan-American Convention for which relief can be granted. In addition, because the record shows that the parties' goods are not the same, it would be futile to allow Applicant time to amend its counterclaim, Opposer's motion to dismiss Applicant's counterclaim based on Article 8 of the Convention is **GRANTED**, and the counterclaim is dismissed with prejudice.

## III.   Opposer's Motion to Strike Applicant's Affirmative Defense

With respect to the opposition proceeding, Applicant alleges as an affirmative defense that "Opposer is unable to establish priority … under Section 2(d) of the

15

Lanham Act because Applicant has priority over [O]pposer based on Articles 7 and 8 of the … Convention." 9 TTABVUE 5-6. Opposer requests that the Board strike this defense.

Pursuant to Fed. R. Civ. P. 12(f), which is applicable to Board proceedings under Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), the Board may order stricken from a pleading any insufficient defense, or any redundant, immaterial, impertinent or scandalous matter. *See Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1753 n.6 (TTAB 2013), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014); *Am. Vitamin Prods. Inc. v. Dowbrands Inc.*, 22 USPQ2d 1313 (TTAB 1992) (motion to strike affirmative defenses granted); *see also* TBMP § 506.

## A. Affirmative defense under Article 7 of the Convention

In an opposition, priority is not at issue with respect to pleaded registrations, absent the filing of a proper counterclaim to cancel them. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974); *see also* Trademark Rule 2.106(b)(3), 37 C.F.R. § 2.106(b)(3). In this proceeding, Opposer pleads ownership of two U.S. registrations. While Applicant asserted a counterclaim against these registrations, we have already determined that the counterclaim, based on Article 8 of the Convention, is unavailable to Applicant for the reasons discussed above and, accordingly, the counterclaim has been dismissed. Thus, without a viable counterclaim, priority is not an issue in this case and the defense based on Article 7 cannot be considered. This conclusion is supported by the wording of Article 7 of the Convention itself.

Article 7 sets forth two prerequisites that must exist for a party to file an opposition or assert an affirmative defense under that article, specifically: the party asserting priority must (1) own a mark that is protected under the domestic law of one of the Contracting States, and (2) know that the adverse or "interfering" party is using or applying to register the interfering mark.

> **Any owner of [a] mark protected in one of the Contracting States in accordance with its domestic law, who may know that some other person is using or applying to register or deposit an interfering mark** in any other of the Contracting States, shall have the right to oppose such use, registration or deposit and shall have the right to employ all legal means, procedure or recourse provided in the country in which such interfering mark is being used or where its registration or deposit is being sought, and upon proof that the person who is **using such mark, or applying to register or deposit it**, had knowledge of the existence and continuous use in any of the Contracting States of the mark on which opposition is based upon goods of the same class the opposer may claim for himself the preferential right to use such mark in the country where the opposition is made or priority to register or deposit it in such country, upon compliance with the requirements established by the domestic legislation in such country and by this Convention (emphasis added).

Interpreting the Convention by giving its terms their ordinary meaning in the context of the treaty and in a way that best fulfills the purposes of the treaty, *see Diaz*, 83 USPQ2d at 1325, we construe the phrase "using … an interfering mark" to refer to **use**, rather than registration, of the marks. *See Diaz* at 1326 (opposer's claim of priority is not predicated upon ownership of a federal registration but rather upon use in the United States).

Therefore, we conclude that Article 7 of the Convention only provides a right to assert an affirmative defense when the interfering party's purported rights are based solely on use of the interfering mark. In view of the foregoing, we hold that the

Convention does not articulate a right of priority over registered marks. *Cf. Diaz*, 83 USPQ2d at 1326 ("The text of Article 7 specifically gives the foreign owner of a mark the right to challenge priority rights based on use."). Accordingly, because Opposer's marks are registered in the U.S., Applicant cannot assert priority as an affirmative defense under Article 7 of the Convention. In view thereof, Opposer's motion to strike is **GRANTED** and the affirmative defense is stricken with prejudice.

### B. Affirmative defense under Article 8 of the Convention

There is no affirmative defense of priority articulated under Article 8 of the Convention. Therefore, to the extent Applicant's affirmative defense asserts priority under Article 8, Opposer's motion to strike is **GRANTED** and the affirmative defense based on Article 8 is also stricken with prejudice. *See* Fed. R. Civ. P. 12(f); Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a).

### IV. Proceeding Resumed; Trial Dates Reset

Opposer's motion to dismiss Applicant's counterclaims is granted, and its motion to strike Applicant's affirmative defense is granted. Accordingly, this proceeding will go forward solely with respect to Opposer's claim under Trademark Act Section 2(d), 15 U.S.C. § 1052(d).

This proceeding is resumed. Trial dates are reset as shown in the following schedule:

| | |
|---|---|
| **Deadline for Discovery Conference** | **3/31/2020** |
| **Discovery Opens** | **3/31/2020** |
| **Initial Disclosures Due** | **4/30/2020** |
| **Expert Disclosures Due** | **8/28/2020** |

| | |
|---|---|
| **Discovery Closes** | 9/27/2020 |
| **Plaintiff's Pretrial Disclosures Due** | 11/11/2020 |
| **Plaintiff's 30-day Trial Period Ends** | 12/26/2020 |
| **Defendant's Pretrial Disclosures Due** | 1/10/2021 |
| **Defendant's 30-day Trial Period Ends** | 2/24/2021 |
| **Plaintiff's Rebuttal Disclosures Due** | 3/11/2021 |
| **Plaintiff's 15-day Rebuttal Period Ends** | 4/10/2021 |
| **Plaintiff's Opening Brief Due** | 6/9/2021 |
| **Defendant's Brief Due** | 7/9/2021 |
| **Plaintiff's Reply Brief Due** | 7/24/2021 |
| **Request for Oral Hearing (optional) Due** | 8/3/2021 |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125, 37 C.F.R. §§ 2.121-2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b), 37 C.F.R. §§ 2.128(a) and (b). Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a), 37 C.F.R. § 2.129(a).